JAMES J. DeCOTIS *vs.* LEO R. D'ANTONA.

Essex.   December 7, 1965. — February 3, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Trust,* Constructive trust.  *Partnership,* What constitutes.  *Joint Enterprise.*

Where it appeared in a suit in equity that the parties originally agreed to purchase business property as partners or joint adventurers but that later, upon the defendant's proposing and negotiating to purchase the property for himself, the plaintiff told the defendant to "leave it alone" and to "stay out of . . . [the plaintiff's] business because . . . [the plaintiff was] going to buy it alone," and that thereafter the defendant purchased the property, it was held that the relationship of partners or joint adventurers and of consequent trust and confidence between the parties had terminated before the defendant purchased the property, and that there was no basis for adjudging the defendant a constructive trustee of the property for himself and the plaintiff.

BILL IN EQUITY filed in the Superior Court on September 15, 1961.

The plaintiff appealed from decrees entered by *Bolster,* J., after hearing on a master's report.

*Paul A. Good* for the plaintiff.

*Bernard J. Dwyer* for the defendant.

SPALDING, J.   The objective of this bill in equity is to impose a constructive trust for the benefit of the plaintiff and the defendant as partners on a parcel of real estate alleged to have been acquired by the defendant in violation of a fiduciary duty owed to the plaintiff.

The case was referred to a master whose findings included the following: The plaintiff and the defendant first

met in December, 1960, and thereafter became friends. On several occasions they talked about going into business together. They discussed the liquor and the motel business and the possibility of financing and building a bowling alley. Subsequently they got in touch with a broker named Bucchiere and instructed him to bring to their attention "any good leads in land sites, restaurants, liquor lounges, motel sites, and bowling alley sites" as they were "going to be partners." About this time the defendant, with Bucchiere, looked at two restaurants which were for sale. In January, 1961, the plaintiff and the defendant, with another broker, looked at business sites in Peabody, Georgetown and Haverhill, but nothing was ever done to acquire any of these properties.

In August, 1961, one Pitman, who owned a motel on Route 1, Saugus, known as Saugus Pines, authorized Bucchiere to produce a buyer for the property. Bucchiere told the plaintiff that Saugus Pines was for sale, and the plaintiff informed the defendant of this fact. The plaintiff and the defendant discussed the possibility of developing the property, and the defendant told the plaintiff that he desired to look at it. The plaintiff told him "to go ahead but not to talk with anyone as Bucchiere was the agent for it." After viewing the property, the defendant talked with the plaintiff about purchasing it together "and . . . going in business . . . as partners." The defendant agreed to give the plaintiff a check for $2,500 to be used for a down payment and "they would go fifty-fifty on the deal."

The Saugus Pines property included a motel and a diner. The plaintiff and the defendant "agreed they would pay $110,000 or $115,000 for all the property or $75,000 or $85,000 for everything excluding the Diner." The plaintiff, in the defendant's presence, told Bucchiere to try to get the property at these prices, preferably at the lower amounts. Subsequently, the defendant asked the plaintiff if "he [would] mind if he bought the place alone." The plaintiff replied, "Look, now, I called you on the deal. We agreed to be partners. Now leave the thing alone because Mr. Bucchiere has got the check to buy the place and you

know that and just leave it alone, stay out of my business.'' Later, upon learning that the defendant was negotiating to buy the property, the plaintiff called him on the telephone and said, ''[S]tay out of my business because I am buying the place . . . . I was good enough to call you and now you don't want to be my partner. I am going to buy it alone.''

The plaintiff went to Saugus Pines with Bucchiere and subsequently Bucchiere submitted to Pitman (the owner) an offer of $90,000 for the property, exclusive of the diner, and told him that he would make a deposit of $5,000. The deposit was not accepted.

In August or September, Bucchiere learned that Saugus Pines had been purchased by the defendant. Shortly thereafter Bucchiere met the defendant who told him that he did not want to be regarded as a ''dirty double crosser'' but that the property was a ''terrific buy and he wanted to grab it [for] himself.''

The final paragraph of the master's report reads: ''I find that because of the oral agreement between the parties that they would buy the property as partners there was a relationship of 'trust and confidence' between them; that there was a breach of this relationship when . . . [the defendant] secretly purchased the property himself; and that . . . [the defendant] holds the Saugus Pines property upon a constructive trust for the benefit of himself and . . . [the plaintiff].''

There were numerous objections (now exceptions) by the defendant to the master's report. The judge entered an interlocutory decree in which he sustained exceptions numbered 1, 3 and 4, overruled the rest and confirmed the report with the last paragraph struck.[1] A final decree was entered dismissing the bill. From the interlocutory and final decrees the plaintiff appealed.

The decrees were right.

There can be doubt that the plaintiff and the defendant

---

[1] The substance of exceptions 1, 3 and 4 was that there was no relationship of trust and confidence existing at the time the defendant purchased the property and hence there was no basis for imposing a constructive trust on it.

DeCotis v. D'Antona.

originally intended to embark on a business enterprise in which they would be either partners or joint adventurers. Whether the relationship would have been one or the other need not concern us, for in either case their duties to each other, so far as here material, would be the same. "While the enterprise continues, joint adventurers, like partners, owe to one another the utmost good faith and loyalty." *Mendelsohn* v. *Leather Mfg. Corp.* 326 Mass. 226, 233. If during the existence of either relationship one of the members of the enterprise acquired property for himself that he was under a duty to obtain for the enterprise he would hold the property on a constructive trust. *Rolikatis* v. *Lovett*, 213 Mass. 545, 548. *Cann* v. *Barry*, 293 Mass. 313. *Meinhard* v. *Salmon*, 249 N. Y. 458. Scott, Trusts (2d ed.) § 499.

On the facts found by the master no partnership or joint adventure existed at the time the defendant acquired Saugus Pines. That relationship, if there was one, had been terminated. When the plaintiff learned that the defendant was seeking to purchase the property for himself, the plaintiff told him unequivocally that the arrangement between them was at an end, and that he proposed to buy the property "alone." Thereafter each was free to acquire the property for himself. The plaintiff could not have it both ways. He could not repudiate the arrangement and thus buy the property for himself and at the same time treat the arrangement as subsisting in order to hold the defendant accountable in the event he bought the property first.

The subsidiary facts found by the master did not support his ultimate finding to the effect that the defendant acquired the property in breach of a duty of trust and confidence owed to the plaintiff. The judge, therefore, rightly struck this finding from the report. With this finding eliminated, the plaintiff's case fails. *Cardullo* v. *Landau*, 329 Mass. 5.

This is the opinion of a majority of the court.

> *Interlocutory decree affirmed.*
> *Final decree affirmed with*
> *costs of appeal.*