GERALD DOIRON *vs.* FRANCIS E. CASTONGUAY.

Barnstable.   November 5, 1987. — February 16, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Consumer Protection Act*, Unfair act or practice. *Partnership*, What constitutes, Accounting.

The evidence in a civil action supported the judge's findings that the defendant manufacturer had no interest in the plaintiff inventor's patent on a certain device and that the plaintiff had not committed any unfair or deceptive acts or practices; however, the judge erred in finding a manufacturing and marketing agreement between the parties to be unenforceable, and the case was remanded for a determination of the nature of the agreement and an accounting of the obligations, if any, thereunder. [706-708]

CIVIL ACTION commenced in the Superior Court Department on July 12, 1983.

The case was heard by *Walter E. Steele*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Francis J. Cranston* for the defendant.

*Richard N. Rougeau (William F. Butler, III,* with him) for the plaintiff.

WILKINS, J. The plaintiff, Doiron, invented and obtained a patent on a fly-tying vise which could accommodate a variety of hooks used by fly fishermen. In the later part of 1980, Doiron agreed with the defendant, Castonguay, that they would combine their efforts. Castonguay, who owned a machine shop in Barre, would manufacture the vises, and Doiron, who lived on Cape Cod and already had orders for approximately 240 vises, would market them. Castonguay would produce 1,000 vises at an estimated cost of eight to ten dollars each. He would then deliver them without charge to offset Doiron's initial contribution to the effort, and the two would share equally the gross proceeds from the sale of the vises.

In late December, 1980, or early January, 1981, Castonguay delivered a number of vises to Doiron. Later in January, Castonguay complained to Doiron that· his costs were running above the estimated cost of $8 to $10 for each vise on which they had based their agreement.

The judge found that Doiron was under great pressure to deliver vises that he had agreed to sell in reliance on Castonguay's promises and that Doiron could not have established a new source of the needed vises. The judge found that Doiron thereupon reluctantly agreed to pay Castonguay $16.63 a vise for the first one thousand vises and $18.63 for each subsequent vise. In September, 1982, Doiron wrote Castonguay terminating their relationship, which at that time Doiron described as a partnership.

Doiron commenced this action seeking a declaratory judgment that Castonguay had no interest in the patent on the vise. The judge agreed with Doiron's position, and Castonguay has appealed from that determination. The judge's findings were warranted on that issue, and his ruling of law on the facts found was correct. We need not discuss the point further.

Castonguay by counterclaim sought an accounting and the appointment of a receiver and asserted that Doiron had violated G. L. c. 93A (1986 ed.). The judge dismissed the counterclaim. He determined that, in pressing for a new arrangement concerning payment for the vises, Castonguay placed Doiron under economic duress (see *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.*, 8 Mass. App. Ct. 340, 342 [1979]), and that the new arrangement was accordingly unenforceable. He also concluded that the evidence did not show a violation of G. L. c. 93A by Doiron.[1]

The evidence did not warrant the judge's finding that Doiron accepted Castonguay's proposed new arrangement under

---

[1] The judge assumed, without deciding, that G. L. c. 93A applied to the transactions between these joint venturers. There is authority that G. L. c. 93A does not apply to transactions between members of a single legal entity. See *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 467 (1982). See also *Riseman* v. *Orion Research Inc.*, 394 Mass. 311, 313-314 (1985); *Manning* v. *Zuckerman*, 388 Mass. 8, 14 (1983).

economic duress. Doiron, whose testimony was often obscure and unresponsive, did not testify that he agreed to the new arrangement involuntarily, that he had no alternative, or that he was coerced into accepting Castonguay's terms. He in fact denied that he had agreed to any new arrangement at all, even though he thereafter made payments to Castonguay consistent with its terms. Doiron also presented no evidence tending to show that he was under any legal obligation to deliver vises that he could not fulfil with vises he had on hand.

We agree that Doiron did not violate G. L. c. 93A in his dealings with Castonguay. Their venture was terminable at will by either party. See G. L. c. 108A, § 31 (1) (b) (1986 ed.) (partnership); *Johnson* v. *Kennedy*, 350 Mass. 294, 298 (1966) (partnership); 2 S. Williston, Contracts § 319C, at 647 (3d ed. 1959) (joint venture). We see nothing in Doiron's conduct after termination that amounts to an unfair or deceptive act or practice.

Castonguay argues that the judge erred in not ruling that there was a partnership relationship between the parties. The judge concluded that there was a joint venture. In our view, nothing turns on the distinction.[2] In either event, if there was an enforceable agreement between Doiron and Castonguay to act together to produce and to sell vises, there must be an accounting between them.[3] In addition, if there was an enforce-

---

[2] Joint venturers are subject to the same fiduciary duties of good faith and loyalty as are partners. See *DeCotis* v. *D'Antona*, 350 Mass. 165, 168 (1966); *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952), and cases cited. Generally the relationships between the parties to a joint venture are so similar to those of partners that their rights, duties, and liabilities are tested by similar or identical rules. 2 S. Williston, Contracts § 318C, at 623-624 (3d ed. 1959). See also *Berwin* v. *Cable*, 313 Mass. 431, 435 (1943); *Eastern Elec. Co.* v. *Taylor Woodrow Blitman Constr. Corp.*, 11 Mass. App. Ct. 192, 197 (1981). The Uniform Partnership Act, G. L. c. 108A, §§ 1 et seq. (1986 ed.), thus is generally applicable to joint ventures by analogy, though it does not govern directly. See *Eastern Elec. Co.* v. *Taylor Woodrow Blitman Constr. Corp.*, supra.

[3] A partner has a right to a formal account as to partnership affairs whenever circumstances make it just and reasonable. G. L. c. 108A, § 22 (*d*). All partners are required generally to "render on demand true and full information of all things affecting the partnership to any partner." G. L. c. 108A, § 20.

Doiron *v.* Castonguay.

able agreement to pay Castonguay a particular amount for each vise delivered to the joint endeavor and full payment has not been made, that obligation should be satisfied. There also may be assets of the joint endeavor, including vises unsold on the date of termination, that must be accounted for. We express no view as to whether Doiron owes anything beyond the amounts he has already paid to Castonguay.[4]

We sympathize with the problem that a judge may have in resolving any accounting problems in this case. Doiron kept the books, received all payments for vises, and paid Castonguay and himself. The partnership tax returns from 1981 and 1982 were referred to at trial but not introduced in evidence. They may assist in making an accounting. How the value of the patent and Doiron's services are to be reflected in all of this seems unclear. In certain respects, the judge may simply have to apply a sense of what seems fair in a situation in which the parties created a morass by failing to come to a common understanding of certain important details of their relationship.

The judgment is affirmed in so far as it declares Doiron's exclusive right to the patent, and is otherwise vacated. The case is remanded for further consideration in light of this opinion.

*So ordered.*

---

[4] The judge concluded that gross sales from the beginning until the termination of the arrangement amounted to $112,000 and that Castonguay had received $61,700.