ALFRED S. ROSS & another[1] *vs.* HEALTH AND RETIREMENT
PROPERTIES TRUST & others.[2]

No. 97-P-1354.

Middlesex. October 13, 1998. - December 30, 1998.

Present: WARNER, C.J., GREENBERG, & GILLERMAN, JJ.

*Federal Arbitration Act. Arbitration,* Appropriateness of judicial proceedings,
    Stay of judicial proceedings. *Contract,* Arbitration.

A mere judgment creditor of a party to arbitration could not also be compelled
    to participate in the arbitration to the exclusion of the creditor's right to
    proceed in litigation, where the creditor had not so agreed in writing.
    [85-87]
In a civil action, the defendants were not entitled to a stay of the proceedings
    pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, where the plaintiff
    was not a party to any arbitration agreement with the defendants [87-88];
    moreover, the judge did not abuse his discretion, in the circumstances, in
    denying the defendants' motion for a stay pending a decision in the other
    forum [88-89].

CIVIL ACTION commenced in the Superior Court Department on
October 11, 1996.

A motion to compel arbitration and to stay judicial proceed-
ings was heard by *Isaac Borenstein,* J.

*Frank J. Bailey* for the defendants.
*Sandra Sue McQuay* for the plaintiffs.

GILLERMAN, J. The defendants appeal from an order of the
Superior Court (without opinion) denying their motion to
compel arbitration of all claims against them,[3] see the Federal

---

[1]Walter A. Margerison.

[2]HRPT Advisors, Inc.; Connecticut Subacute Corporation; Gerard M.
Martin; Barry M. Portnoy; and Sullivan & Worcester.

[3]The defendants' motion to compel arbitration and to stay this action was
filed at a stage in these proceedings when Ross was the only plaintiff, and the
motion was directed to Ross only. Margerison was added later as a party
plaintiff under allegations that he was an unpaid judgment creditor. The

Arbitration Act (FAA), 9 U.S.C. §§ 2 & 4 (1994), and to stay this action under § 3 of the FAA pending the conclusion of the arbitration.

From an appendix of almost 900 pages, we cull the undisputed facts material to the issues on appeal. During 1990 - 1992, Ross loaned Charles and Sylvia Brennick $17.5 million to be used in the various entities (Brennick entities) through which the Brennicks conducted their health care business. The Brennicks defaulted, and Ross brought suit in 1994 in the Superior Court. The suit was settled in 1996, as described in detail below.

During the course of the proceedings brought by Ross against the Brennicks, Ross learned that on May 11, 1992, the Brennick entities had entered into an agreement with the defendant Health and Retirement Properties Trust (trust), a real estate investment trust, under the terms of which all or substantially all of the assets of the Brennick entities had been transferred to the trust, allegedly for inadequate consideration. As part of the same transaction, an indemnification agreement was entered into between the defendant trust and the Brennick entities. That agreement included the covenant by the Brennick entities to arbitrate all claims for losses arising out of the May, 1992, transaction.

On November 13, 1995, a judge of the Superior Court ordered the Brennick entities and the defendants to proceed to arbitration, and those proceedings remain ongoing as of the date of the argument of this case. In the arbitration proceedings, the Brennick entities assert claims against the defendants for alleged fraudulent misrepresentations, legal malpractice, breach of fiduciary duty of attorney to client, conspiracy, and violations of the Federal security laws and RICO — all arising out of the May, 1992, transaction, and related transactions (collectively, the May, 1992, transactions), and the trust asserts certain claims against the Brennick entities.

On or about May 31, 1996, Ross and the Brennick entities entered into a settlement agreement regarding their litigation in the Superior Court. The agreement, which was approved by a judge of the Superior Court, called for the entry of judgment in favor of Ross in the amount of $36,380,189.13, with joint and

---

defendants' notice of appeal refers only to the denial of the defendants' original motion, and the defendants' brief to this court refers only to Ross. We follow the defendants' format in this opinion, although the result of this opinion will be binding on all parties.

several liability among the Brennick entities. The settlement agreement also provided that Ross would keep only fifty per cent of the judgment amount, and that the judgment amount would be paid out of any proceeds the Brennick entities recovered from the defendants, reduced by a certain percentage of any proceeds Ross recovered from the defendants in these proceedings.

On October 11, 1996, Ross commenced this action against the defendants. In an amended complaint filed on May 6, 1997, Ross asserted a claim under the Uniform Fraudulent Convey-ance Act, G. L. c. 109A;[4] a claim that the defendants were in control of the Brennick entities, and therefore are responsible for the May, 1992, transaction as their "alter ego"; a claim of breach of fiduciary duty to creditors, including Ross; a claim under G. L. c. 93A; and a claim to reach and apply any sums recoverable by the Brennick entities and the Brennicks against the defendants. All of these claims are alleged to arise out of the May, 1992, transactions.

It is undisputed that the contracts and the transactions which are the subject of this controversy involve interstate commerce, and that the jurisdictional requirement of the FAA is satisfied. *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 277 (1995). *Loche* v. *Dean Witter Reynolds, Inc.*, 26 Mass. App. Ct. 296, 301-302 (1988). However, the defendants make no claim that Ross is a party to an agreement to arbitrate disputes with the defendants, and it is settled law that "[a]rbitration under the [Federal Arbitration] Act is a matter of consent, not coercion." *Mastrobuono* v. *Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). See *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) ("the FAA does not require parties to arbitrate when they have not agreed to do so . . . . It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms").

In response, the defendants argue that (i) Ross is a joint venturer with the Brennick entities, (ii) the claims of Ross against the defendants are "inextricably intertwined" with the claims of the Brennick entities against the defendants which

---

[4]See now the Uniform Fraudulent Transfer Act, added by St. 1996, c. 157, effective October 8, 1996, and codified as G. L. c. 109A, replacing the repealed Uniform Fraudulent Conveyance Act. The Uniform Fraudulent Transfer Act is not applied retroactively. See *First Fed. Sav. & Loan Assn.* v. *Napoleon*, 428 Mass. 371, 373-374 (1998).

have been in arbitration since November 13, 1995, and (iii) Ross is the assignee of such claims. For each of the foregoing reasons, the defendants argue, Ross should be compelled to join the ongoing arbitration proceedings between the Brennick entities and the defendants, and these proceedings should be stayed pending the outcome of the arbitration proceedings.

1. *The defendants' motion to compel arbitration.* The defendants claim that Ross is a joint venturer with the Brennick entities "for the purpose of pursuing litigation against these defendants," and the fact that Ross is entitled to a portion of any recovery by the Brennick entities against the defendants, and that the Brennick entities are entitled to a portion of any recovery by Ross in these proceedings, is evidence of that joint venture. The defendants also claim that Ross and the Brennick entities "have agreed to cooperate and otherwise to pursue their claims jointly."

"[A] joint venture is a partnership of a sort." *Cardullo* v. *Landau,* 329 Mass. 5, 8 (1952). It arises when the parties "intend to associate themselves as such." *Ibid.* The Uniform Partnership Act, G. L. c. 108A, §§ 1 et seq., is generally applicable to joint ventures by analogy. *Doiron* v. *Castonguay,* 401 Mass. 705, 707 n.2 (1988).

There appears to be no "business" which Ross and the Brennicks share as "co-owners." See G. L. c. 108A, § 6 ("A partnership is an association of two or more persons to carry on as co-owners a business for profit"). Ross is simply a judgment creditor of the Brennick entities seeking payment of the judgment. There is no evidence of either invested capital, or the sharing of losses (or the expenses of litigation) or profits — just the possibility of the recovery of damages actually suffered. There is apparently no joint property interest in the subject matter of the venture. See *Gurry* v. *Cumberland Farms, Inc.,* 406 Mass. 615, 623-624 (1990).

We note, too, that Ross is expressly excluded from any participation in the arbitration proceedings being pursued by the Brennick entities against the defendants. See *id.* at 624 (the intent to associate as joint venturers is evidenced, inter alia, by the "right to participate in the control of the venture"). Paragraph 8(d) of the settlement agreement between Ross and the Brennick entities provides that "Ross shall not be entitled to participate in or direct the litigation or the engagement of counsel by any of the Brennick entities with respect to . . .

[their claims against the defendants and other entities]." This provision precludes the conduct that the defendants claim is critical evidence of the joint venture.

Even if we were to conclude that Ross and the Brennick entities were joint venturers in pursuit of the defendants, there is no reason to suppose that Ross would be bound by the unilateral decision of the Brennick entities (expressed, as noted above, in their indemnification agreement with the defendants) to arbitrate their claims against the defendants. The analogous provision in the statute regarding partnerships, see *Doiron* v. *Castonguay*, *supra* at 707 n.2, is G. L. c. 108A, § 9(3)(*e*), which provides that "partners have no authority to . . . submit a partnership claim . . . to arbitration or reference."

Admittedly, Ross could be deprived of his right of access to the courts of the Commonwealth without his written agreement if his subsequent conduct indicates an assumption of the obligation to arbitrate, or if traditional agency principles would bind a nonsignatory to an arbitration agreement. *Thomson-CSF, S.A.* v. *American Arbitration Assn.*, 64 F.3d 773, 777 (2d Cir. 1995). The defendants make no such claim in this case, and we see no basis in the record for such a claim.

We conclude that the defendants' joint venture argument has no merit. Section 2 of the FAA requires "[a] written provision . . . to settle by arbitration." Ross is not a party to any such agreement with the defendants. "[I]f the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." *Thomson-CSF, S.A.* v. *American Arbitration Assn.*, *supra* at 779.[5,6]

Finally, the defendants argue that Ross is compelled to

---

[5]Requiring a nonconsenting party to submit to arbitration would raise grave questions under art. 11 of the Massachusetts Declaration of Rights, which guarantees to "every subject of the Commonwealth" access to a judicial forum to resolve their justiciable disputes. See *Graizzaro* v. *Graizzaro*, 36 Mass. App. Ct. 911, 912 (1994) (order of single justice, staying all proceedings in the Probate Court and ordering the parties to proceed to settlement discussions, reversed, citing art. 11). Whether Ross, alleged to be a resident of Florida, would be entitled to the benefit of art. 11 has not been argued and we express no opinion on the issue.

[6]The defendants also argue that because Ross may be the recipient of a portion of the damages awarded to the Brennick entities in the arbitration proceedings, Ross is the "assignee" of the Brennick entities. Since, the argument continues, the indemnification agreement, including the covenant to arbitrate, is binding on "assigns," Ross is bound by the covenant to arbitrate his claims

arbitrate because his claims are "inextricably intertwined" with the claims of the Brennick entities. We disagree. It is true that Ross's claims against the defendants and the claims of the Brennick entities against the defendants all arise out the May, 1992, transaction. Much more to the point, however, is the fact that Ross's claims are those of Ross alone as a creditor of the Brennicks and the Brennick entities, and we see no basis upon which he can be deprived of the right to pursue those claims in these proceedings. Moreover, there is no prejudice to the defendants, for Ross will be entitled only to those damages he alone has suffered, if any.

2. *The motion to stay these proceedings under § 3 of the FAA.* There is no State right of appeal from an interlocutory order denying a stay of judicial proceedings absent an order compelling arbitration.[7] The FAA, § 16(a)(1), does give a right of an immediate appeal from an order refusing a stay order "under section 3 of [the FAA]." Assuming, arguendo, that § 16 of the FAA governs State court appellate procedure, but see *Weston Sec. Corp.* v. *Aykanian, ante* 72, 74-75 (1998), the question then becomes whether the defendants are entitled to a stay order under § 3 of the FAA.

Section 3 of the FAA, upon which the defendants rely, authorizes a stay of court proceedings "[i]f any suit or proceeding be brought in any of the courts of the United States upon an issue referable to arbitration *under an agreement in writing for such arbitration*" (emphasis added). As discussed above, there was no agreement in writing binding Ross to arbitrate his claims against the defendants, and § 3, therefore, does not authorize a

---

against the defendants.

In response to the argument, we have reviewed the memoranda of law (original memorandum and reply memorandum) filed by the defendants in the Superior Court and find that this argument was not presented to that court. The defendants make no contrary claim in their reply brief. The defendants' argument cannot be raised for the first time on appeal, and we do not consider it. See *Still* v. *Commissioner of the Dept. of Employment & Training*, 423 Mass. 805, 808 n.3 (1996).

[7]General Laws c. 251, § 18, permits an appeal from an interlocutory order denying an application to compel arbitration but not from an interlocutory order denying an application to stay judicial proceedings. However, G. L. c. 251, § 2(*d*), mandates that when there is an action or proceeding involving an issue subject to arbitration, and there is an order compelling arbitration, the order for arbitration shall include a stay of the proceedings. Thus, if on appeal there is an order compelling arbitration, that order will include a stay of any judicial proceedings.

stay order in this case. See *IDS Life Ins. Co.* v. *SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996) ("[S]ection 3 assumes and the case law holds that the movant for a stay, in order to be entitled to a stay under the arbitration act, must be a party to the agreement to arbitrate, *as must be the person sought to be stayed*" [emphasis added]). See also *Citrus Mktg. Bd. of Israel* v. *J. Lauritzen A/S*, 943 F.2d 220, 224-225 (2d Cir. 1991) (a nonparty to an arbitration agreement is "not entitled to a section 3 stay").[8] Thus, the defendants are not entitled to a mandatory stay because Ross is not a signatory to the indemnification agreement which contains the arbitration clause.

Although recent case law indicates that the defendants may not obtain a mandatory stay under the FAA, it is always open to a party to seek a stay of proceedings pending a decision in another case. *Citrus Mktg. Bd. of Israel* v. *J. Lauritzen A/S*, 943 F.2d at 225. *IDS Life Ins. Co.* v. *SunAmerica, Inc.*, 103 F.3d at 529. See *American Home Assur. Co.* v. *Vecco Concrete Constr. Co. of Va.*, 629 F.2d 961, 964 (4th Cir. 1980); *Danvers* v. *Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 164 (1981); *Loche* v. *Dean Witter Reynolds, Inc.*, 26 Mass. App. Ct. at 304-305. However, the issue before us is whether the judge abused his discretion in denying such relief, see *IDS Life, supra* at 530. We see no such abuse in this case. Ross is not a party to any arbitration agreement with the defendants, and he is asserting in an appropriate forum his own claims against the defendants. Justice Cardozo long ago pointed out that "the suppliant for a stay [under the FAA where the applicant is not a party to an arbitration agreement] must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair

---

[8]The defendants cite several cases which indicate that a party may be entitled to a mandatory stay under the FAA even where a nonsignatory to the arbitration agreement is involved in the action. However, two of these cases, *Morrie Mages & Shirlee Mages Foundation* v. *Thrifty Corp.*, 916 F.2d 402 (7th Cir. 1990), and *Kroll* v. *Doctor's Assocs., Inc.*, 3 F.3d 1167 (7th Cir. 1993), are Seventh Circuit cases which predate the Seventh Circuit's decision in *IDS Life Ins. Co.* v. *SunAmerica, Inc.*, 103 F.3d 524. Thus, it appears that the earlier cases have been implicitly overruled by the holding in *IDS Life*. The defendants cite to other cases to support their position. However, one of the cases is a decision of the United States District Court for the Eastern District of Pennsylvania not reported in the Federal Supplement, while the other, *Contracting Northwest, Inc.* v. *Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983), rests its opinion on alternative holdings, one of which is contrary to *IDS Life*, the other of which is the inherent power of the court to control its docket and conserve judicial resources, an issue discussed in the text, *infra*.

possibility that the stay for which he prays will work damage to some one else." *Landis* v. *North Am. Co.*, 299 U.S. 248, 254-255 (1936). This is not a case of clear hardship to the defendants.

After the filing of the briefs and the record appendix, the defendants filed a "motion to supplement the record on appeal with newly-discovered evidence or, in the alternative, for remand to the Superior Court." We have reviewed the defendants' proposed additions to the record, and have determined that they contain nothing that would affect the conclusion we have reached. See Mass.R.A.P. 8(e), as amended, 378 Mass. 932 (1979); *Pastene Wine & Spirits Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 612, 615-616 (1988).

The motion to supplement the record is denied. The order denying the defendants' motion to compel arbitration and to stay these proceedings is affirmed.

*So ordered.*