DOROTHY ASKENAZY & others[1] *vs.* KPMG LLP & others.[2]

No. 12-P-863.

Suffolk. December 6, 2012. - May 23, 2013.

Present: BERRY, FECTEAU, & CARHART, JJ.

*Auditor. Fraud. Negligence,* Misrepresentation. *Arbitration,* Arbitrable question, Appeal of order compelling arbitration. *Federal Arbitration Act. Contract,* Arbitration.

Denial of the defendant's motion to compel arbitration was proper in a civil action brought by limited partners in two hedge funds alleged to have served as so-called "feeder" funds to a company involved in a fraudulent Ponzi investment scheme, claiming that the defendant, which performed various audit and tax services for the hedge funds, engaged in fraud in the inducement, negligent misrepresentation, G. L. c. 93A violations, the aiding and abetting of fraud, and professional malpractice, where the plaintiffs' claims were direct and not derivative (and thus not bound by the defendant's engagement letters with the company that managed the hedge funds as its general partner, which provided arbitration as the sole method of dispute resolution), in that the plaintiffs' claims that they were induced to invest in the hedge funds, to stay invested, and in some cases to make additional investments described individualized harm independent of harm to the hedge funds and rested on a duty to each plaintiff that arose from the defendant's misstatements and professional incompetence, and in that the plaintiffs' claims against the defendant for losses sustained as a result of paying taxes on so-called "phantom income" as a result of false information provided to them by the defendant on their tax forms were necessarily individual [652-657]; further, principles of equity did not require the plaintiffs to submit to arbitration, in that the plaintiffs neither were party to the engagement letters nor expressly assented to them, and their claims were not contract-based or dependent on third-party beneficiary status [657-658].

CIVIL ACTION commenced in the Superior Court Department on December 10, 2010.

[1]Twenty-six individuals and entities who invested in one of two hedge funds: the Rye Select Broad Market Prime Fund, L.P.; and the Rye Select Broad Market XL Fund, L.P. Likewise, the named plaintiff also invested in these funds.

[2]The remaining defendants did not join the motion to compel arbitration, see note 3, *infra,* and therefore are not parties to this appeal.

A motion to compel arbitration was heard by *Janet L. Sanders,* J.

*Gary F. Bendinger,* of New York (*Gregory G. Ballard,* of New York, *& Lisa C. Wood* with him) for KPMG LLP.

*Jeff Ross,* of Minnesota, for the plaintiffs.

FECTEAU, J. KPMG LLP (KPMG) appeals from the denial, by a judge of the Superior Court, of its motion to compel arbitration, pursuant to G. L. c. 251, § 18(*a*)(1). KPMG claims error in the judge's order on the ground that the plaintiffs' claims are derivative, and thus the plaintiffs ought to be bound by KPMG's engagement letters with Tremont Partners, Inc. (Tremont Partners), and Tremont Capital Management, Inc. (Tremont Capital), which provided arbitration as the sole method of dispute resolution.[3] In a lengthy and well-reasoned memorandum, the judge allowed most of the plaintiffs' claims against KPMG to proceed on the basis that the claims were direct and not derivative. We affirm.

*Background.* This matter relates to the fraudulent Ponzi[4] investment scheme run by Bernard L. Madoff. The plaintiffs here were limited partners of the Rye Select Broad Market Prime Fund, L.P.; and the Rye Select Broad Market XL Fund, L.P. (collectively, Rye Funds), two hedge funds serving as so-called "feeder" funds to Madoff's company, and being managed by Tremont Partners as the Rye Funds' general partner. In 2008, after Madoff admitted his fraud and was arrested, the Rye Funds were discovered to be valueless and the plaintiffs' investments unrecoverable. The plaintiffs brought suit in 2010 against Tremont Partners; its upstream corporate parent, Tremont Capital; KPMG; and various other entities.

The specific remaining claims against KPMG sound in tort: fraud in the inducement, negligent misrepresentation, G. L.

---

[3]The judge denied KPMG's motion to compel arbitration, filed on the basis of arbitration provisions in various engagement letters. As provided in the record, these engagement letters were between KPMG and Tremont Partners (the Rye Funds' general partner), and KPMG and Tremont Capital (the corporate parent of Tremont Partners). She ruled that the fact that "some of the plaintiffs' claims against KPMG are direct and not derivative . . . compels the conclusion that KPMG's motion to compel arbitration of these claims must be denied. . . . It is undisputed that [the arbitration provision] applies only to those claims by the Funds' limited partners which are derivative in nature."

[4]See generally *Commonwealth v. Ponzi,* 256 Mass. 159 (1926).

c. 93A violations, aiding and abetting fraud, and professional malpractice.[5] Over a period of years, KPMG performed various audit and tax services for the Rye Funds. In general, the plaintiffs allege that KPMG did not adequately perform its auditing and tax functions and, essentially, by certifying its auditing results and failing to bring to the plaintiffs' attention various "red flags" regarding Madoff's scheme, aided and abetted that scheme, and defrauded the plaintiffs.

KPMG claims that it was not employed by any of the plaintiffs and did not provide them with any particularized information, but rather, pursuant to contract, KPMG audited the financial statements of, and provided tax services to, the Rye Funds.[6] The contracts with KPMG, i.e., the engagement letters, contain broad-form arbitration provisions.[7] According to KPMG, all of the plaintiffs' claims against KPMG are subject to these engagement letters principally because the claims are derivative in nature, and thus belong exclusively to the Rye Funds, which are bound by the arbitration provisions; consequently, the Rye Funds' limited partners, i.e., the plaintiffs herein, lack standing to assert those claims directly. KPMG also claims that even if the claims are direct, they are subject to the arbitration provisions in the engagement letters. We examine KPMG's contentions only to the extent necessary to determine whether the plaintiffs' claims are subject to the broad-form arbitration provisions contained in the engagement letters — which none of the plaintiffs signed — and not whether the claims have been pleaded sufficiently to

---

[5]The claim against KPMG alleging aiding and abetting breach of fiduciary duty was dismissed by the judge as derivative, belonging to the Rye Funds.

[6]Pursuant to the audit engagement letter agreement between KPMG and Tremont Capital and its successors, KPMG provided auditing services to the Rye Funds. Likewise, pursuant to tax engagement letters between KPMG and Tremont Partners and its successors, KPMG performed tax compliance and consulting services for the Rye Funds.

[7]The arbitration provisions in these letters, see note 6, *supra*, are substantially similar to each other, providing in relevant part: "[a]ny dispute or claim arising out of or relating to the Engagement Letter between the parties, the services provided thereunder, or any other services provided by or on behalf of KPMG . . . shall be resolved in accordance with the dispute resolution procedures set forth [within], which constitute the sole methodologies for the resolution of all such disputes."

withstand scrutiny under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974).[8]

*Direct versus derivative.* KPMG's argument is essentially that to the extent that the plaintiffs' claims are derivative, they necessarily are subject to arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq. (2006), a point with which the plaintiffs do not disagree. Thus, as noted *supra,* the bulk of KPMG's argument focuses on whether the plaintiffs' claims are derivative. While the parties do not dispute that Delaware law applies,[9] KPMG asserts that the judge misapplied the standards of Delaware law applicable to this issue, and particularly *Tooley* v. *Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031 (Del. 2004), to conclude that some of the plaintiffs' claims were directly alleged as they demonstrated individualized harm to the individual investors.

In *Tooley, supra* at 1033, the court set, as a matter of Delaware law, a prospective rule for determination whether a claim is direct or derivative, and the issue turns solely on: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the suing stockholders, individually)." The complexity in analyzing whether a claim is direct or derivative can be found in the language of *Tooley,* described as the headwaters of two divergent streams of interpretation: one in which courts conclude that, to be a direct

---

[8]Several defendants, including KPMG, filed motions to dismiss under rule 12(b)(6); KPMG alternatively moved to compel arbitration. Because the denial of a motion to dismiss is interlocutory in nature, without referral by a single justice (absent here), jurisdiction is lacking for panel review of that order. See G. L. c. 231, § 118; *Hoff* v. *Northeastern Univ.,* 41 Mass. App. Ct. 511, 513 (1996) ("In the usual case, the denial of the motion to dismiss is an interlocutory order, one from which, by reason of its lack of finality, there is no appeal," citing *Pollack* v. *Kelly,* 372 Mass. 469 [1977]. "A denial by a Superior Court judge of an application for an order compelling arbitration, although also interlocutory, is by statute an interlocutory order from which the disappointed party may appeal. G. L. c. 251, § 18[*a*][1]"). Therefore, only KPMG's appeal from the order denying its motion to compel arbitration is properly before us, and we confine our consideration to that claim of error alone.

[9]The Rye Funds are organized as Delaware limited partnerships, and thus Delaware law governs the issue of shareholder standing. See, e.g., *Johnston* v. *Box,* 453 Mass. 569, 578 (2009).

claim, the plaintiff's harm cannot be related in any way to the harm suffered by the partnership, otherwise the claim is derivative; the other being that direct and derivative claims can spring from the same underlying events and conduct, so long as the plaintiff alleges an individualized harm that was not also suffered by the partnership generally. *Poptech, L.P.* v. *Stewardship Inv. Advisors, LLC,* 849 F. Supp. 2d 249, 262-263 (D. Conn. 2012). We conclude that the cases that follow the latter stream offer the more cogent and persuasive analyses.

In *Stephenson* v. *Citco Group Ltd.,* 700 F. Supp. 2d 599 (S.D.N.Y. 2010), for example, the court, applying *Tooley,* noted that, as matter of Delaware law, some claims arising out of a case or controversy could be direct while others arising out of the same case or controversy could be derivative. *Id.* at 610, citing *Grimes* v. *Donald,* 673 A.2d 1207, 1212-1213 (Del. 1996). As a result, while the partnership could bring derivative claims based on the auditor's fiduciary or contractual duty to the partnership, the plaintiffs could bring direct claims based on the auditor's independent duty to them as investors. *Ibid.* See *Anwar* v. *Fairfield Greenwich Ltd.,* 728 F. Supp. 2d 372, 400-402, 454-457 (S.D.N.Y. 2010) (with reference to Delaware law, investors in Madoff feeder fund had standing to bring direct claims for negligent misrepresentation and other torts against fund's auditors, based on allegations that auditors owed responsibilities to investors, regardless of duties to funds); *Newman* v. *Family Mgmt. Corp.,* 748 F. Supp. 2d 299, 316 (S.D.N.Y. 2010) (were claims adequately pleaded, plaintiffs could assert direct claims for fraud and misrepresentation based on inducement, where recovery would flow only to those investors who alleged they "were so induced").[10]

Turning to the application of *Tooley* here, the judge ruled that

---

[10]See also *Medkser* v. *Feingold,* 307 F. Appx. 262, 265 (11th Cir. 2008) (unpublished opinion) (fraud claims direct, not derivative); *Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt. LLC,* 376 F. Supp. 2d 385, 409 (S.D.N.Y. 2005) (valuation fraud injured plaintiffs, not funds; direct action proper); Morrone ex rel. Arotech Corp. *vs.* Erlich, U.S. Dist. Ct., No. 09CV1910, slip op. at 5 (E.D.N.Y. Mar. 31, 2011) (derivative suit dismissed because injury accrued to shareholders individually, not to corporation); Metropolitan Life Ins. Co. *vs.* Tremont Group Holdings, Inc., Del. Ch. Ct., No. CIV.A. 7092, slip op. at 14-17 (Dec. 20, 2012) (denying Tremont's motion to dismiss claims of breach of contract, fraud, and intentional misrepresentation against insurance carriers).

the plaintiffs' claims that they were induced to invest in the Rye Funds, to stay invested, and in some cases to make additional investments, describe individualized harm independent of harm to the Rye Funds, and rest on a duty to each plaintiff that is not merely derivative of KPMG's fiduciary duties as the Rye Funds' auditor, but rather arises from KPMG's misstatements and professional incompetence.[11] Additionally, the judge ruled that the plaintiffs' claims against KPMG for losses sustained by the plaintiffs as a result of paying taxes on so-called "phantom income" are also direct and not derivative because "the Rye Funds were pass-through tax entities, so the profits and losses of the Funds were allocated to the individual partners. The plaintiffs allege that, as a result of false information provided to them by KPMG in their Form K-1 tax statements, they each paid taxes on income which did not exist. Because the Rye Funds themselves did not pay taxes, these tax related losses are necessarily individual."[12]

Concluding that the plaintiffs had standing to pursue their claims directly by means of this lawsuit, the judge relied on the rationale and the conclusion in *Stephenson*, 700 F. Supp. 2d at 610. There, the plaintiff was a limited partner in a feeder fund called Greenwich Sentry which had invested most of its assets with Madoff. *Id.* at 602. The plaintiff alleged claims of negligence and fraud based on the auditor's misrepresentations, which induced the plaintiff either to invest in the fund or alternatively to increase his investment. *Id.* at 611-612. Significant to the

[11]The complaint alleged: "each plaintiff was separately induced by Defendants' misrepresentations to invest in the Funds and/or to continue holding their investments in the Funds to the exclusion of other investment opportunities. For example, each plaintiff invested at different times in different amounts. Some plaintiffs invested on multiple occasions over the course of their investment while others made a single investment. Some plaintiffs took distributions over the course of their investment while others did not. Each plaintiff paid different amounts of fees over the course of their investment. Each plaintiff's damages are unique and cannot be determined on a pro-rata basis with other limited partners in the Rye Funds based upon capital accounts. Therefore, any recovery by the Funds which would be distributed to investors on a pro-rata basis based upon capital accounts would result in a windfall to certain limited partners to the detriment of some or all Plaintiffs."

[12]The complaint alleged: "Further, separate and apart from their out of pocket losses, each Plaintiff incurred damages related to the payment of taxes on phantom income. The Rye Funds would have no standing to recover such damages which were unique to each Plaintiff."

case at bar, in determining that the plaintiff's tort-based claims were direct to the extent that they alleged inducement, the judge, *id.* at 608, quoted from *Tooley*, 845 A.2d at 1039: "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing any injury to the corporation." In short, the plaintiff's inducement-based claims alleged direct injury, particularly, "some injury other than that to the corporation" which involved a particular subset of the limited partners, i.e., only those limited partners that were so induced, and did not involve a harm to the partnership that would affect all of its limited partners in proportion to each one's ownership interest. *Stephenson, supra* at 612, quoting from *Big Lots Stores, Inc.* v. *Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1177 (Del. Ch. 2006).

Similarly, *Poptech, L.P.* is persuasive that inducement constitutes a "separate and individual injury, and therefore permits a plaintiff to state a direct claim," especially in light of the facts before us; here, KPMG's misrepresentations induced the plaintiffs to invest, forgo other investment opportunities, and ultimately pay taxes based on phantom income as reported to them by KPMG.[13] *Poptech, L.P.*, 849 F. Supp. 2d at 263 ("The injury . . . in such a claim is not only the loss of the shares,

---

[13]We set forth the specific injuries alleged with respect to each claim here at issue.

With respect to fraud in the inducement and negligent misrepresentation, the plaintiffs alleged:

> "Because of KPMG's misrepresentations and omissions, Plaintiffs paid taxes on capital accounts that did not have the value that they were told. Moreover, Plaintiffs could not properly manage their investments and they were damaged by the complete loss of their investments in the Rye Funds and through lost investment opportunities. Plaintiffs were also damaged because they had used the false information provided by KPMG in its K-1 tax statements to individually calculate and pay taxes on phantom income."

With respect to violation of G. L. c. 93A, §§ 9 and 11, the plaintiffs alleged:

> "Because of KPMG's unfair and deceptive acts or practices, Plaintiffs were damaged by the complete loss of their investments in the Rye Funds and through the payment of taxes on phantom income."

but the fact that those shares were lost as a result of the induce-
ment. The Court does not believe that this necessarily benefits
some shareholders unfairly at the expense of others, because
shareholders who were fraudulently induced to invest in a
corporation are not similarly situated to shareholders who did
not rely on misrepresentations or omissions"). See *Little* v.
*Cooke,* 274 Va. 697, 710 (2007) (error, in derivative action, to
award damages for income tax liability incurred on account of
sale of real estate; damages not recoverable because investors
of partnership, and not partnership itself, "incurred whatever
income tax liability resulted from the sale").

KPMG's reliance upon *KPMG LLP* v. *Cocchi,* 132 S. Ct. 23,
24 (2011), is misplaced. There, the United States Supreme Court
issued an order that granted certiorari and summarily vacated a
decision of a Florida appellate court that had upheld the denial
of a motion to compel arbitration based on the nonarbitrability
of two of the investor's four claims. See generally *KPMG LLP*
v. *Cocchi,* 51 So. 3d 1165 (Fla. Dist. Ct. App. 2010). The Court
did not express disagreement with the Florida appellate court's
ruling that the negligent misrepresentation and deceptive practice
claims were direct and not derivative. 132 S. Ct. at 26. Instead,
the Court confirmed that, "when a complaint contains both
arbitrable and nonarbitrable claims, the [FAA] requires courts to
'compel arbitration of pendent arbitrable claims . . . , even
where the result would be the possibly inefficient maintenance
of separate proceedings in different forums.' " *Ibid.,* quoting
from *Dean Witter Reynolds Inc.* v. *Byrd,* 470 U.S. 213, 217
(1985). Because the Florida appellate court had not "examine[d
the] complaint with care to assess whether any individual claim

---

With respect to aiding and abetting fraud, the plaintiffs alleged:

> "Because of Tremont's and the Rye Funds' misrepresentations and
> omissions, and because KPMG aided and abetted those misrepresenta-
> tions and omissions, Plaintiffs were damaged by the complete loss of
> their investments in the Rye Funds and through the payment of taxes on
> phantom income."

With respect to professional malpractice, the plaintiffs alleged:

> "As a result of KPMG's failure to fulfill its duties as a professional ac-
> counting firm, Plaintiffs suffered damages in the loss of their invest-
> ments in the Rye Funds and through lost investment opportunities."

must be arbitrated" and failed to determine the arbitrability of the remaining two claims (breach of fiduciary duty and professional malpractice), the Court remanded the case for such a determination. *Ibid.*

On remand, the Florida appellate court again affirmed that the negligent misrepresentation and deceptive practice claims were direct and therefore not arbitrable, but remanded the arbitrability of the other two claims to the trial court for determination in the first instance. See *KPMG LLP* v. *Cocchi*, 88 So. 3d 327, 330-331 (Fla. Dist. Ct. App. 2012).

Similarly, KPMG can take little relief from cases such as Agile Safety Variable Fund, L.P. *vs.* Tremont Group Holdings, Inc., Colo. Dist. Ct., No. 10CV2904 (Apr. 25, 2012) (plaintiffs' claims derivative as "limited partners suffered harm because the entire fund was diminished," and complaint did "not sufficiently allege . . . [that] the individual limited partners suffered an economic loss distinct from that sustained by the [funds] as a whole"), or Sandalwood Debt Fund A, L.P. *vs.* KPMG LLP, N.J. Super. Ct. Law Div., No. L-10255-11 (Apr. 27, 2012) (granting KPMG's motion to stay and compel arbitration, finding that Sandalwood had not suffered individualized harm and that recovery was not based on "anything other than Sandalwood standing in the shoes of [the funds]").

Thus, we conclude that the plaintiffs' claims here, inducement-based, are direct and not subject to the arbitration provisions in the engagement letters.

*Arbitration and nonsignatories.* The judge also was unpersuaded by KPMG's alternative contention that even if the plaintiffs' claims were direct and not derivative, the plaintiffs are bound, nonetheless, by the arbitration provisions because their claims either arise out of the engagement letters or otherwise are based upon aspects of them. The judge concluded, correctly in our view, that the plaintiffs were not bound to arbitrate. The plaintiffs neither were party, nor expressly assented, to the engagement letters. Moreover, the plaintiffs are neither implicitly nor equitably bound to arbitrate because their claims are extra-contractual, neither contract-based nor dependent upon third-party beneficiary status, nor do the plaintiffs seek to enforce the liability of KPMG because of the engagement letters.

For this proposition, KPMG relies on New York law, where the engagement occurred, as applicable. However, even when considered under New York law,[14] a party cannot be compelled to arbitrate its dispute "unless the evidence establishes the parties' 'clear, explicit and unequivocal' agreement to arbitrate." *God's Battalion of Prayer Pentecostal Church, Inc.* v. *Miele Assocs., LLP*, 6 N.Y.3d 371, 374 (2006), quoting from *Matter of Waldron (Goddess)*, 61 N.Y.2d 181, 183 (1984). Nonsignatories may be forced to arbitrate only if their "conduct evinces an intent to be bound." *Sozzi* v. *Moishe's Moving Sys., Inc.*, 16 Misc. 3d 1121(A) (N.Y. Sup. Ct. Aug. 7, 2007) (nonsignatory to insurance policy containing arbitration provision bound nonetheless to arbitrate because intent to be bound shown by his asserting breach of contract claim based on policy).

This concept sometimes has been referred to as a branch or an alternative theory of equitable estoppel; however, as with those cases discussed *supra*, in which a judge could find an intent to be bound by the agreement or an attempt to selectively enforce part of the agreement but not the arbitration provision, such an intent must be clearly shown. See *Thomson-CSF, S.A.* v. *American Arbitration Assn.*, 64 F.3d 773, 778-780 (2d Cir. 1995); *E.I. Dupont de Nemours Co.* v. *Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-198 (3d Cir. 2001); *InterGen N.V.* v. *Grina*, 344 F.3d 134, 145-146 (1st Cir. 2003). We see neither an intent by the plaintiffs to be bound by the engagement letters nor any effort by them to selectively enforce a portion of the letters while avoiding the arbitration provisions.

*Conclusion.* Based on the foregoing, we affirm the order on KPMG's motion to compel arbitration as it properly was decided. Specifically, the claim of aiding and abetting breach of fiduciary duty is to be dismissed, and the remaining claims against KPMG shall go forward.

*So ordered.*

---

[14]Massachusetts law is similar. See *Ross* v. *Health & Retirement Properties Trust*, 46 Mass. App. Ct. 82, 86 (1998) ("[The plaintiff] could be deprived of his right of access to the courts of the Commonwealth without his written agreement if his subsequent conduct indicates an assumption of the obligation to arbitrate, or if traditional agency principles would bind a nonsignatory to an arbitration agreement").