Salinger, Kenneth W., J.
Steward Health Care Network, Inc. (“SHCN”), is a physician network. It negotiates and implements contracts with insurers and other entities that pay for SHCN’s participating doctors to provide medical care to the payors’ insureds or members. Whittier IPA, Inc., is an association of independent physicians. It joined the SHCN network in January 2012, but began exploring other options in 2013. After SHCN learned that Whittier had agreed to join a competing physician network run by the Beth Israel Deaconess Care Organization (“BIDCO”), SHCN terminated its agreements with Whittier effective August 31, 2014.
*156 Whittier claims that is still owed substantial sums by SHCN under the parties’ contracts. The court (Kaplan, J.) granted partial summary judgment in Whittier’s favor in June 2015, declaring that if SHCN received incentive payments from health insurers and other payors for periods during which Whittier was an SHCN member, then “SHCN breached its contract with Whittier by failing to pay Whittier its pro rata share of those payments.” The amount that SHCN must pay Whittier is still in dispute. The current case schedule, which was jointly requested by both parties, requires the litigants to complete all fact discoveiy by February 10, 2017, and to complete the exchange of any expert reports by March 24, 2017.
SHCN seeks leave to assert counterclaims against Whittier and third-party claims against Anna Jacques Hospital. The Court will DENY this motion. It would be futile to allow SHCN to assert its proposed counterclaims against Whittier for breach of contract because they could not survive a motion to dismiss. The proposed claims against Anna Jacques for intentional interference and allegedly violating G.L.c. 93A would also be futile. In any case, it would be unfairly prejudicial to Whittier and to Anna Jacques to allow permissive joinder of a new defendant-in-counterclaim under Mass.R-Civ.P. 20 just weeks before the completion of discovery in this case. SHCN has no right to join Anna Jacques as a defendant-in-counterclaim under Rule 19 and does not seek to assert third-party claims for indemnification or contribution as allowed under Rule 14.
1. Proposed Counterclaims Against Whittier
SHCN seeks leave to assert counterclaims against Whittier for allegedly breaching parts of its written contracts with SHCN. The Court will deny leave to assert these counterclaims because doing so would be futile, in that these counterclaims could not survive a motion under Mass.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. See generally Johnston v. Box, 453 Mass. 569, 583 (2009) (“Courts are not required to grant motions to amend prior [pleadings] where ‘the proposed amendment... is futile.’ ” (quoting All Seasons Servs., Inc. v. Commissioner of Health & Hosps. of Boston, 416 Mass. 269, 272 (1993)); Thermo Electron Corp. v. Waste Mgmt. Holdings, Inc., 63 Mass.App.Ct. 194, 203 (2005) (affirming denial of motion for leave to assert counterclaim that would have been futile); Mancuso v. Kinchia, 60 Mass.App.Ct. 558, 572 (2004) (if amendment to add claim could not survive motion to dismiss, allowing amendment would be exercise in futility).
1.1.Contract Provisions
When Whittier agreed in October 2011 to join the SHCN network, the parties executed and entered into a written “Service Agreement” and a related “Letter Agreement.” The following provisions of the parties’ contracts are relevant.
1.1.1.Exclusivity Provisions
In the Service Agreement, Whittier granted SHCN exclusive authority to negotiate and enter into “Risk Contracts” on behalf of Whittier and its physicians, and gave SHCN “a limited right of first opportunity . . . to negotiate and enter into Risk Contracts” on behalf of all of Whittier’s physicians, during the term of the contract. Whittier also agreed that its doctors who work as primary care physicians would not “participate in any Risk Contract with any Payor” other than through SHCN. The term “Risk Contract” was defined to mean an agreement with a “Payor” regarding the provision of and payment for medical services. The term “Payor” was defined to mean insurers and other private or governmental entities that pay for medical services provided to enrolled individuals.
SHCN acknowledged in the Letter Agreement that, as of the time SHCN and Whittier entered into their contractual relationship, Whittier was contractually obligated to give a competitor of SHCN called the Lower Merrimack Valley Physician Hospital Organization, Inc. (or “LMVPHO”) “a right of first opportunity to negotiate payor contracts on behalf of Whittier and Whittier Physicians.” SHCN agreed that all the terms of its Service Agreement with Whittier, including the exclusive representation and right of first opportunity provisions, were subject to Whittier’s pre-existing obligation to LMVPHO and thus would not have any effect until Whittier was able to terminate its obligations to LMVPHO.
1.1.2. Termination Provisions
The initial term of the Service Agreement was five years, beginning January 1, 2012. But SHCN and Whittier agreed that their contractual arrangements could “be terminated by either party, with or without cause, at any time upon ninety (90) days prior written notice to the other party.” The Letter Agreement provided that if the Service Agreement were terminated by either party then Whittier would have the right to terminate its participation in any existing contract with a third-party payor and would not be obligated to participate in any contract with a third-party payor that SHCN entered into or renewed after the date of the termination notice.
1.1.3. Confidentiality Provision
The SHCN Service Agreement also contained a provision that addressed “proprietary information.” This provision imposed a number of obligations, including that “[t]he parties shall . . . hold in strict confidence any information specified in writing by any party hereto as confidential information.”
This contract specifies in the first paragraph that it was “made and entered ... by and between” SHCN and Whittier, which means that they are the “parties” referred to in the confidentiality provision. The contract expressly distinguishes between Whittier (which it calls the “IPA” because it is an independent physi *157 cian association) and the physicians who are members of Whittier (which it calls the “IPA Participating Providers”) .
1.2. Claim for Breach of Exclusivity Provisions
Count I of SHCN’s proposed counterclaim would assert a claim that Whittier violated the exclusivity and right of first opportunity provisions of the SHCN Service Agreement by negotiating and then entering into a contract with BIDCO. In late 2013 Whittier negotiated an agreement to join BIDCO’s network of participating physicians. Whittier and BIDCO executed a letter agreement to that effect on December 6, 2013. This written contract specifies that its effective date would be the date on which the physician members of Whittier “become participating providers in the Risk Contracts” between BIDCO and three specified health insurers.[1] The same paragraph obligates BIDCO to “use it reasonable best efforts” to have the Whittier physicians begin participating in those Risk Contract “as of January 1, 2014.” At the time that Whittier entered into this contract with BIDCO it was still part of the SHCN network and still bound by the SHCN Service Agreement.
Count I could not survive a motion to dismiss because the proposed counterclaim does not allege facts plausibly suggesting that Whittier breached the exclusivity and first opportunity provisions of its contract with SHCN by negotiating a possible move to BIDCO and then agreeing to do so. To determine whether a party has stated a legally viable claim, a court must “look beyond the conclusory allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief.” Maling v. Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 473 Mass. 336, 339 (2015), quoting Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011); accord Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008).
The exclusivity and first opportunity provisions of the SHCN Service Agreement do not apply to the new contract that Whittier entered into with BIDCO. To the contrary, they only apply to “Risk Contracts” with health insurers and other “Payors.” The term “Risk Contract” is defined as “[a]n agreement between SHCN or [Whittier] and a Payor” under which SHCN or Whittier “agrees to arrange for and coordinate the provision of’ health care services to individuals enrolled in a health benefit plan of some kind, “and the Payor agrees to pay for” such services. The term “Payor” is defined to mean “[a] health maintenance organization, preferred provider arrangement, insurance company or carrier, employer, employer self-insured health benefit plan or trust, or governmental entity” that is obligated to pay for medical care covered by a health insurance policy or other health benefit plan. Networks of health care providers such as BIDCO or SHCN are not “Payors” as that term is defined in the Service Agreement. They negotiate with Payors, and manage and implement contracts under which Payors agree to compensate health care providers who participate in that network, but they do not insure or provide analogous benefits to individuals and thus are not “Pay-ors.” The contract that Whittier entered into with BIDCO is therefore not a “Risk Contract” as SHCN defined that term in the Service Agreement.
SHCN cannot create a viable claim for breach of contract merely by making the conclusory and incorrect assertion that the Whittier/BIDCO letter agreement is a “risk contract.” See generally Mating, 473 Mass. at 339. The interpretation of the parties’ unambiguous written contracts “is a question of law” that the court may resolve when deciding whether a party has asserted a viable contract claim. See, e.g., Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007) (affirming dismissal of complaint for failure to state a viable claim for breach of contract). Similarly, whether language used in a contract “is ambiguous is also a question of law for the court.” Berkowitz v. President & Fellows of Harvard College, 58 Mass.App.Ct. 262, 270, rev. denied, 440 Mass. 1101 (2003) (ordering dismissal of complaint for failure to state a viable claim for breach of contract). Where the material provisions of a contract are unambiguous, as they are here, a court “cannot accept the bare assertion in the plaintiffs complaint” that the opposing party violated the contract, when that assertion is based on a misreading of the contract. Eigerman, supra; accord Flomenbaum v. Commonwealth, 451 Mass. 740, 751-52 & n.12 (2008) (granting motion to dismiss contract claim because plain language of contract made clear that Commonwealth could terminate chief medical examiner before completion of full five-year term).
Whittier had the absolute contractual right to terminate its contracts with SHCN on ninety days’ notice, without needing to show good cause or provide any reason for doing so. And it retained the right to negotiate a successor agreement with a different network like BIDCO before giving SHCN any notice of termination. Doing so did not violate BIDCO’s “first opportunity” rights any more than SHCN’s prior negotiations to bring Whittier into its network violated the “first opportunity” rights that Whittier had previously granted to LVMPHO, which is yet another competing network of providers. SHCN’s assertion in its reply memorandum that BIDCO was negotiating risk contracts with an insurance payor while Whittier was still affiliated with SHCN, and was doing so with the expectation that Whittier’s physicians would participate in those risk contracts if Whittier left SHCN and joined BIDCO, is beside the point. The documents provided by SHCN show that BIDCO was negotiating with Tufts Health Plan on behalf of whatever physicians may affiliate themselves with BIDCO, but was not commit *158 ting Whittier physicians to anything. That did not violate Whittier’s obligations to SHCN.
It would be improper to construe the exclusivity and first opportunity provisions in the SHCN Service Agreement “in isolation,” without considering Whittier’s right to terminate the contract and join a different provider network; instead, the Court must consider the meaning of the provisions that SHCN claims were breached “in the context of the entire contract.” General Convention of the New Jerusalem in the United States of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007). The Court must construe the Service Agreement as a whole in a manner that will “give it effect as a rational business instrument and in a manner which will carry out the intent of the parties.” Robert and Ardis James Foundation v. Meyers, 474 Mass. 181, 188 (2016), quoting Starr v. Fordham 420 Mass. 178, 192 (1995). And “the parties’ intent ‘must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part.’ ” Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass.App.Ct. 154, 158 (2005), quoting Ucello v. Cosentino, 354 Mass. 48, 51 (1968), and Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp., 282 Mass. 367, 375 (1933).
Whittier’s contractual right to terminate its relationship with SHCN would have little practical meaning if the exclusivity and first opportunity provisions were construed to bar Whittier from negotiating a new contractual arrangement with a successor network, and from making sure that the new network had the necessary relationships with health insurers so that Whittier physicians could continue to treat their current patients, before terminating its contract with SHCN.
1.3. Claim for Breach of Confidentiality Provisions
Count II of SHCN’s proposed counterclaim would assert a claim that Whittier violated the confidentiality provision of the SHCN Service Agreement “by disclosing to Anna Jacques SHCN’s confidential and proprietary business information.” The counterclaim alleges that Whittier “disclosed to Anna Jacques confidential information concerning annual payments SHCN made to Whittier.” It also asserts, “[o]n information and belief, [that] Whittier disclosed other confidential SHCN information to Anna Jacques or BIDCO.”[2]
It would be futile to assert this counterclaim because the disclosure of confidential information, without more, would not violate the Service Agreement. The relevant contract provision only required Whittier to “hold in strict confidence any information specified in writing by any party hereto as confidential information.” Thus, Whittier would not have breached the contract by disclosing arguably confidential information if SHCN never “specified in writing” that this was the kind of information that SHCN considered to be confidential. But the proposed counterclaim does not allege any facts plausibly suggesting that Whittier disclosed any information that SHCN “specified in writing” was confidential.
In its reply memorandum, SHCN argues in effect that it could amend its proposed counterclaim to allege that in May 2013 SHCN issued written policies to its participating providers (including, presumably, Whittier’s physicians) stating in part that “ [a]ll materials distributed from SHCN to provider and provider’s staff are confidential and proprietary and shall not be disclosed to any party without the express written consent from SHCN.” This would also be futile.
Adding this new allegation would still not plausibly suggest that Whittier was ever put on written notice that SHCN considered any of the information that it sent to Whittier to be confidential. Whittier is not a “provider” within the meaning of that policy, or under the Service Agreement. The policy makes clear that the “providers” it covers are individual physicians; that is why the policy requires all SHCN providers to “be in good standing on the medical staff at a Steward affiliated hospital." Similarly, the Service Agreement distinguishes between Whittier (which it calls the “IPA,” or independent physician association) and the individual physician “providers.” Assuming that the May 2013 policies provided sufficient notice to individual physicians that anything and everything they received from SHCN was confidential, even if in fact it was purely public information, such a notice to physician providers does not constitute written notice that information received by Whittier regarding payments made to it by SHCN — or any other information conveyed by SHCN — had to be treated as confidential information.
1.4. Claim for Breach of Implied Covenant
Count III of SHCN’s proposed counterclaim would assert a claim that Whittier violated the implied covenant of good faith and fair dealing that is part of the contracts between SHCN and Whittier. More specifically, SHCN alleges that Whittier violated the implied covenant by disclosing SHCN’s confidential business information to Anna Jacques, and by negotiating with SHCN to revise its payment obligations to Whittier without disclosing that Whittier had been negotiating with BIDCO.
It would be futile for SHCN to assert a counterclaim that Whittier breached the implied covenant by disclosing confidential information. As discussed above, SHCN has not alleged facts plausibly suggesting that Whittier violated the confidentiality provision of the Service Agreement. Invoking the implied covenant adds nothing to the proposed claim under the express confidentiality provision, because the implied covenant “does not create rights or duties beyond those the parties agreed to when they entered into the contract.” Boston Med Ctr. Corp. v. Secretary of Executive Office of Health & Human Servs., 463 Mass. 447, 460 (2012) (affirming dismissal of claim), quoting Curtis, 458 Mass. at 680.
It would similarly be futile to assert that Whittier breached the implied covenant by negotiating contract revisions with SHCN before disclosing its agreement with BIDCO. An alleged misrepresentation in the course of negotiating a contract or a contract amendment does not implicate this implied covenant, because “this covenant pertains to bad faith in the *159 performance of a contract, not in its execution.” Sheehy v. Lipton Indus., Inc., 24 Mass.App.Ct. 188, 194 n.6 (1987) (affirming grant of summary judgment dismissing claim). Thus, Whittier’s alleged failure to disclose that it was planning to leave the SHCN network before negotiating revised payment terms for the remainder of the contract term would not give rise to a viable claim for breach of the implied covenant.
1.5. Claim for Declaratory Relief
Count IV of SHCN’s proposed counterclaim would seek a declaration that Whittier committed a material breach of its contractual obligations to SHCN. This claim for declaratory relief would be futile because, as discussed above, SHCN alleges no facts plausibly suggesting there is any actual controversy between the parties regarding whether Whittier breached any of its contractual obligations. See Manufacturing Imp. Corp. v. Georgia Pacific Corp., 362 Mass 398, 400-01 (1972) (affirming dismissal of declaratory judgment claim regarding rights under contract, because plaintiff alleged no facts under which it would be entitled to recover from defendant for breach of contract); see generally Alliance, AFSCME/SEUI AFL-CIO v. Commonwealth, 425 Mass. 534, 537-39 (1997) (in absence of actual controversy between the parties, claim for declaratory relief under G.L.c. 231A must be dismissed).
2. Proposed Claims Against Anna Jacques
SHCN also seeks leave to add claims against a new defendant, Anna Jacques Hospital, either by asserting third-party claims under Mass.R.Civ.P. 14 or by joining Anna Jacques as a counterclaim defendant under Rule 19 or 20. The Court will deny this request as well for two, independent reasons. It would be futile to add these claims against Anna Jacques because they could not survive a Rule 12(b)(6) motion to dismiss. In any case, SHCN has no right to add Anna Jacques as a party and it would be unfair, both to Anna Jacques and to Whittier, to allow SHCN to do so at this late stage of the case.
2.1. Futility
In its proposed third-party complaint, SHCN alleges that “Anna Jacques launched an effort to disrupt the Whittier-SHCN contracts and lure the Whittier physicians to instead join Anna Jacques in an affiliation with Beth Israel’s care network, known as the Beth Israel Deaconess Care Organization or ‘BIDCO.’ ” It also alleges that these “efforts resulted in Whittier breaching its contract with SHCN [and] withdrawing from” SHCN’s physician network. SHCN seeks leave to assert claims against Arma Jacques for tortiously interfering with the contractual relationship between SHCN and Whittier, tortiously interfering with advantageous business relationships that SHCN had with Whittier and several health insurers, and for allegedly violating G.L.c. 93Aby engaging in such tortious interference.
The Court concludes that it would be futile for SHCN to amend its pleadings to assert these claims against Anna J acques.
The proposed claim for tortious interference with the contractual relationship between Whittier and SHCN would be futile because SHCN alleges no facts plausibly suggesting that Whittier was ever induced to breach its contracts with SHCN. To state a claim for intentional interference with contractual relations, a party must allege facts plausibly suggesting that: “(1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions.” Weller v. Portfolio Scope, Inc., 469 Mass. 75, 84 (2014), quoting G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 111 (1991). SHCN cannot make out the second element of this claim because it has not alleged facts that, if proven, would show that Whittier violated its SHCN contracts. The “bare assertion” that Whittier breached its contracts is not enough. Eigerman, 450 Mass. at 287. As discussed above, Whittier was free to terminate its contractual relationship with SHCN, to negotiate a successor arrangement with BIDCO before doing so, and to disclose information that SHCN had not specified in writing was confidential. Thus, even if SHCN could prove that Anna Jacques induced Whittier to leave the SHCN network or to share information regarding SHCN’s payments to Whittier, it cannot show that doing so resulted in Whittier breaking its contracts with SHCN. Therefore, Anna Jacques cannot be liable for tortiously interfering with the contractual relationship between Whittier and SHCN. See JNM Hospitality, Inc. v. McDaid, 90 Mass.App.Ct. 352, 354-55 & 357 (2016) (where landlord did not breach lease by failing to make nonexclusive parking spaces available to customers of restaurant lessee, third party that executed license to use some of those spaces could not be liable for intentional interference with contract); Cavicchi v. Koski, 67 Mass.App.Ct. 654, 661 (2006) (where clients did not breach contingent fee agreements when they discharged their attorney, new lawyer who convinced them to do so could not be liable for intentional interference with contract).
SHCN cannot avoid this problem by claiming in the alternative that Anna Jacques interfered with an advantageous business relationship between Whittier and SHCN, rather than with a contractual relationship. The only business relationship that SHCN alleges it had with Whittier was defined by contract; as a result any claim for intentional interference must be for tortiously inducing a breach of contract, not for tortious interference with a non-contractual advantageous business relationship. Cachopa v. Town of Stoughton, 72 Mass.App.Ct. 657, 658 n.3 (2008).
Nor has SHCN alleged any facts plausibly suggesting that Anna Jacques tortiously interfered with any advantageous business relationship between SHCN and various health insurers. All that SHCN claims with respect to the insurers is that Whittier’s decision to join BIDCO, rather than remain in the SHCN network for the full *160 five-year term of the Service Agreement, “deprived SHCN of substantial revenue that would have flowed to its network.” But if Anna Jacques did nothing unlawful in convincing Whittier to leave the SHCN network, the mere fact than one effect of that move is that SHCN will collect less money from health insurers — because Whittier physicians will no longer be providing compensable medical care through the SHCN network — cannot give rise to a tortious interference claim with respect to the health insurers.
Finally, since SHCN’s claim against Anna Jacques under c. 93A is based solely on and thus “is wholly derivative of’ its claims for tortious interference, and SHCN has not alleged facts plausibly suggesting that Anna Jacques unlawfully interfered with the contracts between SHCN and Whittier, the proposed claim against Anna Jacques under c. 93A would necessarily be futile as well. See Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B., 62 Mass.App.Ct. 34, 40-41 (2004) (ordering judgment in favor of defendant); accord, e.g., Macoviak v. Chase Home Mortgage Corp., 40 Mass.App.Ct. 755, 760, rev. denied, 423 Mass. 1109 (1996) (c. 93A claim “necessarily fail[s]” where it “is solely based upon . . . underlying claim for common law” tort, and that tort claim fails as a matter of law). The allegations that Anna Jacques put some pressure on Whittier to change networks does not state a claim for an unfair trade practice in violation of c. 93A, even though it cause a large number of physicians to leave SHCN’s network and join a competitor. Cf. Buster v. George W. Moore, Inc., 438 Mass. 635, 650-51 (2003) (“the market is a rough and tumble place where a competitor’s lack of courtesy, generosity, or respect is neither uncommon nor in itself unlawful” under c. 93A). “Hard bargaining is not unlawful; it is ‘not only acceptable, but indeed, desirable, in our economic system, and should not be discouraged by the courts.’ ” Cabot Corp. v. AVX Corp., 448 Mass. 629, 639 (2007), quoting 13 S. Williston, Contracts §71.7, at 450 (3d.ed. 1970).
2.2. Timing
Even if SHCN had stated viable claims against Anna Jacques, which it has not, it is far too late in this proceeding to add Anna Jacques as a defendant.
SHCN has no right to assert claims against Anna Jacques in this action. It cannot assert a third-party claim under Mass.R.Civ.P. 14 because it does not allege that Anna Jacques is liable to SHCN for Whittier’s “alleged injuries through indemnity, contribution, or otherwise.” Gabbidon v. King, 414 Mass. 685, 687 (1993) (affirming dismissal of third-party complaint). Nor is Anna Jacques subject to compulsory joinder under Rule 19, because complete relief can be accorded between Whittier and SHCN without Anna Jacques being a party, and Anna Jacques claims no interest in any subject of the action. Cf. Mass.R.Civ.P. 19(a).
The Court has the discretion to join Anna Jacques as a counterclaim defendant under Mass.R.Civ.P. 13(h) and 20(a), because the putative claims by SHCN against Anna Jacques arise out of the same series of transactions or occurrences as do the claims by Whittier against SHCN, and both sets of claims will involve common questions of fact and law. “Rule 20 gives courts wide discretion concerning the permissive join-der of parties, and ’’should be construed in light of its purpose, which ‘is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.’ “ Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 (4th Cir. 2007), quoting Mosley v. General Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974).
But the Court concludes, in the exercise of its discretion, that it would be unfair to allow SHCN to join Anna Jacques as a counterclaim defendant barely a month before the deadline for completing discovery. “[T]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay.” Id., quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1652 (3d.ed. 2001) cf. Smaland BeachAss’n, Inc. v. Genova, 461 Mass. 214, 228 (2012) (judicial construction of federal rules of civil procedure generally applies to parallel state rules). It would be unfair to Anna Jacques to join it as a counterclaim defendant but not give it sufficient time to conduct discovery. Conversely, Whittier would be unfairly prejudiced if Anna Jacques were added to the case and as a result the discovery deadline was extended and resolution of Whittier’s claims against SHCN was therefore delayed.
SHCN has known of and threatened to assert its claims against Anna Jacques at least since September 2014. At that time SHCN wrote to Whittier’s lawyer and asserted “that SHCN has viable claims ... against the entities that improperly induced Whittier to leave SHCN, including . . . Anna Jacques Hospital.” SHCN could have sought to assert claims against Anna Jacques at that time. Or it could have promptly conducted discovery against Anna Jacques to determine whether it had an adequate factual basis for asserting such claims. Instead SHCN waited two years to obtain discovery from Anna Jacques and then seek to assert claims for tortious interference and violation of G.L.c. 93A. In other words, SHCN has no one to blame but itself for the fact that it is now too late to add any claims against Anna Jacques to this civil action.
ORDER
Defendant’s motion for leave to assert counterclaims and to file a third-party complaint is DENIED.

 Blue Cross and Blue Shield of Massachusetts, Inc.; Harvard Pilgrim Health Care and Tufts Health Plans, Inc.

 “For purposes of surviving a motion to dismiss ... a party may allege facts based on ‘information and belief ” and the court must “assume the truth of such allegations.” Polay v. McMahon, 468 Mass. 379, 383 n.5 (2014) (partially reversing Rule 12(b)(6) dismissal).