Grainger, J.
This is an appeal from the dismissal of a claim brought by the commercial tenant of a condominium unit owner against the condominium trustees. The plaintiff, JNM Hospitality, Inc. (JNM), appeals from the summary judgment in favor of the defendant trustees of The Village at Forge Pond Condominium *353 Trust (collectively the trust) ordered by a judge of the Superior Court. JNM asserts that the trust’s execution of a license agreement allowing employees of an abutting United States Postal Service (USPS) facility to use spaces in the vehicle parking lot of the condominium where JNM’s restaurant was located constituted intentional interference in JNM’s contract with its landlord. We disagree, and affirm the judgment.[3]
Background. For purposes of our consideration of the allowance of summary judgment, the facts are not in dispute. JNM operated a restaurant and bar on premises leased from Canton Viaduct, LLC, as assignee of the owner of two commercial units in The Village at Forge Pond Condominium, a mixed-use condominium complex in Canton. The trust is the condominium’s governing entity. See G. L. c. 183A, §§ 8(0, 10. At issue are the provisions of JNM’s lease governing the ability to provide vehicle parking spaces to its customers.
The lease provisions relating to the number and location of parking spaces are both unclear and, due to handwritten revisions,[4] difficult to decipher. The parties dedicate significant energy and many strained arguments to the meaning of lease provisions relating to this issue, with particular emphasis on so-called nonexclusive parking, i.e., spaces not reserved for any particular person or entity.
For purposes of reviewing factual allegations in the motion for summary judgment we adopt, as the law requires, the nonmovant plaintiff’s wording of the contract.[5] See Juliano v. Simpson, 461 Mass. 527, 529-530 (2012), quoting from Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). Thus, we assume that the lease contemplated not only eleven parking spaces dedicated exclusively to JNM’s customers,[6] but also JNM’s right to allow *354 its customers to park in other nonexclusive spaces, some sixty-six in number, available to visitors, owners, and residents of the condominium on a first-come, first-served basis.[7]
We also accept JNM’s assertion that the license agreement allowing USPS employees to use a maximum of fifteen[8] spaces in the condominium property’s parking lot made available fifty-one rather than sixty-six nonexclusive spaces to JNM’s customers.[9] Additional facts appear below as they pertain to the issues.
Discussion. A claim for intentional interference with contractual relations requires proof of four elements: (1) a contract between the plaintiff and a third party, (2) the defendant’s purposeful inducement of the third party to breach the contract in whole or in part, (3) the interference must be not only intentional, but also improper in motive or means of accomplishment, and (4) resulting harm to the plaintiff. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991), citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-817 (1990).
1. Contract breach. The first element, the existence of a contract, is undisputed. On this record, however, JNM has not raised a genuine issue with respect to the second element, an induced breach of the lease or interference with the landlord’s performance of its obligations.
The lease contains no guarantee, or even an inference, that the nonexclusive spaces will be available at any particular time or in any specified number; viewed in the light most favorable to JNM, the lease allows restaurant customers to compete with other visitors, residents, and unit owners for available nonexclusive spaces in the lot. The lease contains no provision that precludes another unit owner or the trust from providing similar access to nonexclusive spaces to other tenants, or to third parties.[10] The *355 lack of a guarantee that these spaces, or any of them, will be available at a given time does not render potential access under the contract meaningless, but it most certainly defeats a claim of interference when other individuals use what the parties have agreed explicitly are “nonexclusive” spaces.[11] In this context it is notable that JNM’s entire claim relies on an eight-word phrase, “[notwithstanding the common use of the parking facilities,” presented as a preamble to introduce the lease provision granting eleven spaces for the exclusive use of restaurant customers.
JNM has conflated conduct by a stranger to the contract, conduct that JNM claims has frustrated its own unilateral expectation of possible use of a greater number of nonexclusive spaces than became available in the condominium parking lot, with conduct that “interfere[d] with the [other contracting] party’s . . . performance.” Harrison v. NetCentric Corp., 433 Mass. 465, 478 n.15 (2001), quoting from Restatement (Second) of Torts § 766 comment k, at 12 (1979). It is undisputed that the landlord itself (Canton Viaduct, LLC) engaged in neither an act nor an omission, and it is equally clear that the USPS license did not prevent the landlord from performing its contractual obligations.
2. Remaining elements. As stated, the failure to raise a genuine issue with respect to the element of a breach is fatal to JNM’s case. While it is therefore unnecessary to address the remaining elements, the record provides additional independent bases for the allowance of summary judgment.
a. Improper means or motive. The record provides only two possible motives for the trust’s license agreement with USPS: (1) containment of previous unauthorized use of the lot by USPS *356 employees, and (2) generation of revenue for the condominium.[12] Neither of these satisfies the legal standard to establish an improper motive. See Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B., 62 Mass. App. Ct. 34, 39 (2004). With respect to improper means, JNM’s reliance on an alleged by-law violation, unaccompanied by any actual reprehensible conduct, presents no genuine dispute under our law, KACT, Inc. v. Rubin, 62 Mass. App. Ct. 689, 699-700 (2004), and merely trivializes the type of conduct that is intended to be actionable.
b. Resulting harm. The record reveals undisputed use of the parking spaces by USPS employees for the previous decade,[13] rendering any harm to JNM from the license, which simply formalized an existing situation, at best “speculative or conjectural.” Chemawa Country Golf, Inc. v. Wnuk, 9 Mass. App. Ct. 506, 510 (1980).

Judgment affirmed.

[14]

 The dispositions of other claims by JNM in its complaint, against the landlord, its principal, and one of the trustees in her individual capacity, are not before us in this review of the separate summary judgment.

 The parties struck phrases from the printed document, initialed changes, and substituted language that in one instance the motion judge considered “difficult to make out.”

 The language in the contract from which JNM derives the right to make nonexclusive spaces available to its customers is the implication contained in an eight-word phrase that precedes the explicit grant of the eleven exclusive spaces: “Notwithstanding the common use of the parking facilities. Tenant shall have the exclusive use of the eleven (11) parking spaces ...” (emphasis supplied).

 There is no dispute that the landlord had the requisite authority over the eleven exclusive spaces.

 The motion judge did not resolve all the parties’ factual disputes over the contractual language in JNM’s favor. However, we do so as we review the grant of summary judgment de novo. See Miller v. Cotter, 448 Mass. 671, 676 (2007).

 Only twelve of these spaces are located in the parking lot; three are located on an adjoining unimproved road. However, for the purposes of summary judgment we use the larger number of fifteen as the number of spaces licensed to USPS.

 There are ninety-one total spaces, eight of which are in private garages and six of which are located down an unimproved road, not easily accessed. The record reveals fifty-one nonexclusive spaces after deducting from the total number of spaces the private garage spaces, the unimproved road spaces, the spaces licensed to USPS, and JNM’s exclusive spaces.

 There is no basis to conclude that other unit owners or the trust would be bound by such a provision even had it been included in JNM’s lease.

 JNM’s attempts to reverse the allowance of summary judgment on a separate basis, namely interference with the use of the eleven exclusive spaces particularly identified in the lease, do not posit a genuine issue or rise to the level of appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). These attempts rely on unsworn statements — that postal employees parked throughout the lot (i.e., in violation of the license granted by the trust) or that condominium residents (not postal employees) parked in spaces reserved for “businesses,” and did so when those businesses were not open — and are unavailing under the strictures of Mass.R.Civ.P. 56, 365 Mass. 824 (1974).
Moreover, JNM’s submission of sworn testimony was to the contrary: According to JNM’s president, “It was essential to [JNM’s] business operation to have the shared use of the common parking facilities in addition to the exclusive [jfc] of [eleven] spaces. The shared use of the common facilities is more important than the exclusive use of eleven (11) spaces.” (Emphasis in original.)

 JNM suggests that complaints or “harassment” by unidentified third parties (asserted, without any evidence, to be unnamed condominium residents) can satisfy the legal element of improper motive on the part of the actual defendants, the trustees, in executing the license agreement. This too fails to present a genuine justiciable dispute of material fact.

 JNM has not disputed evidence presented by the trust that JNM was not only aware of the incursion by USPS employees, but that JNM’s owner complained openly and regularly about this preexisting problem for many years before the USPS license agreement was executed.

 The trust’s request for appellate attorney’s fees is denied.