SUPERIOR COURT 
 
 JOSEPH E. SZAWLOWSKI, AS TRUSTEE OF THE STAN AND MARY ELLEN SZAWLOWSKI FAMILY TRUST v. GEORGE W. PRICE AND OTHERS[1] v. JAMES F. MARTIN AND OTHERS[2]

 
 Docket:
 2180CV0013
 
 
 Dates:
 February 4, 2025
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 HAMPSHIRE
 

 
 Keywords:
 DECISION AND ORDER ALLOWING THE REMAINING DEFENDANTS’ MOTION FOR JUDGMENT ON THE PLEADINGS, BASED ON JUDICIAL ESTOPPEL, AND DISMISSING THE THIRD-PARTY COMPLAINT AS MOOT
 
 

 The remaining claims in this case are asserted by Joseph E. Szawlowski in his capacity as Trustee of the Stan and Mary Ellen Szawlowski Family Trust (“Joseph” or the “Trustee”) against attorneys George Price and Julie Bryan and their law firm Casner & Edwards LLP (the “Casner Defendants”). These claims are based on allegations that the Casner Defendants helped to freeze Stanley E. Szawlowski, Jr. (Joseph’s father) and his family trust out of the family potato business by helping Stanley’s surviving brothers amend the owners’ shareholder stock redemption agreement to delete important protections about valuing the ownership interests of a deceased shareholder.
The Court concludes that Joseph’s claims in this action are barred by judicial estoppel. In a related shareholder lawsuit, which the Court will call the “21-21 Shareholder Action,[3]” Joseph prevailed against Frank Szawlowski, Chester Szawlowski, and the family Companies on Joseph’s claim that the disputed parts of the 2018 amendment are invalid. It would be inequitable, intolerable, and undermine the integrity of the judicial system to permit Joseph to take a directly contrary position in this action as the basis for pressing claims against the Casner Defendants. The Court will therefore exercise its discretion to
 
--------------------------------------------
 
[1]       Julie Bryan, Don J.J. Cordell, Christopher Maffucci, Casner & Edwards LLP, Jeffrey Robbins, Joseph Lipchitz, Page Schroeder, and Saul Ewing Arnstein & Lehr LLP.
[2]        David S. Lawless and Robinson Donovan P.C.
[3]        It was docketed as Hampshire Superior Court civil action no. 2180CV00021.
 
                                                            -1-
 
judicially estop Joseph from asserting claims or arguments that are contrary to the position he successfully pressed in the related action that the relevant parts of the 2018 amendment are not valid.
If one does not consider the allegations that Joseph is estopped from asserting, the other allegations in Joseph’s complaint do not state any viable claims. The Court will therefore allow the Casner Defendants’ motion for judgment on the pleadings on all remaining claims in this action.
Since the Casner Defendants are entitled to judgment in their favor on Joseph’s claims against them, the Casner Defendants’ third-party claims for contribution or indemnification are moot. The Court will therefore dismiss the third-party claims on its own motion.
1. Background. As context, the reader needs to have some familiarity with recent litigation about the Szawlowski family business, the allegations by the Trustee in and the procedural background of this action, and the Court’s decision in the 21-21 Shareholder Action.
1.1. Litigation Over the Family Business. For decades, Frank, Chester, John, and Stanley E. Szawlowski owned and operated a potato farming business that was started by their grandparents, is now based in Hatfield, Massachusetts, and is run through four closely-held corporations and a limited liability company (the “Companies”).[4] In 2009, these four brothers entered into a shareholder stock redemption agreement (the “2009 SSRA”) that allowed the Companies to repurchase a deceased shareholder’s interests at a price based on the fair market value of the Companies’ assets excluding good will, subject to an independent appraisal of such value if requested within a specified time. In 2016 they executed an “Equity Agreement” that valued each of their shares in the family business at $4 million.
John died soon thereafter in early 2016. Stanley died in early 2020. The Stan and Mary Ellen Szawlowski Family Trust (the “Trust”) holds certain interests that had belonged to Stanley. His son Joseph Szawlowski is Trustee of this Trust. The Court understands that Chester passed away October 29, 2024.
This civil action is the sixth lawsuit about the Companies among family members since John passed away. Joseph, as Trustee, is a party to two shareholder lawsuits over ownership and operation of the Companies. The first
 
--------------------------------------------
 
[4]        Szawlowski Realty, Inc.; C&F Farms, Inc.; J&S Farms, Inc.; Szawlowski Potato Farms, Inc.; and Szawlowski Packers, LLC.
 
                                                            -2-
 
of these shareholder lawsuits was filed in 2019 by Stanley and Joseph (as Trustee) against Frank, Chester, and some of their daughters.[5] The second was filed in 2021 by Frank, Chester, and the Companies against Stanley’s Estate and the Trust after Stanley died.[6] In a third lawsuit (also filed in 2019) the Companies sued Joseph personally for breach of fiduciary duty[7]
Joseph then brought this fourth action (also filed in 2021) on behalf of the Trust against the lawyers and law firms that represent other family members and the Companies in the three prior cases. The only remaining defendants are George Price, Julie Bryan, and the law firm Casner & Edwards (the “Casner Defendants”).[8] They recently filed but have not served a third-party complaint asserting contribution and indemnification claims against James Martin, David Lawless and Robinson Donovan P.C. (the “Robinson Defendants”). The Casner Defendants have moved for judgment on the pleadings.
The fifth and sixth lawsuits concern ownership and occupancy of a residence in Whately, Massachusetts, on land that was part of the family business.[9]
 
--------------------------------------------
 
[5] Hampshire Superior Court civil action 1980CV00132.
[6] Hampshire Superior Court civil action 2180CV00021 (the “21-21 Shareholder Action”). The Court resolved the Trust’s counterclaims against Frank and Chester, as discussed below. Both shareholder cases have otherwise been on hold because the parties have been waiting since July 2020 for the Hampshire Probate Court to appoint a personal representative for Stanley’s Estate.
[7] Hampshire Superior Court civil action 1980CV00156. After a bench trial in that case in March 2024, the Court found that Joseph had breached his fiduciary duty by stealing potatoes that he sold for his own account and letting his cousins do so as well, but the Companies waived any claim for compensatory damages and did not prove that Joseph should have to forfeit any of his past compensation. Judgment therefore entered in favor of Joseph, providing that the Companies shall take nothing. Joseph nonetheless filed a notice of appeal.
[8] The Trustee voluntarily dismissed all claims against Don Cordell and Christopher Maffucci. The Appeals Court affirmed the dismissal of all claims against the Saul Ewing defendants (Jeffrey Robbins, Joseph Lipchitz, Page Schroeder, and Saul Ewing Arnstein & Lehr LLP), albeit under Mass. R. Civ. P. 12(b)(6) rather than under the anti-SLAPP statute as the Court ordered. See Szawlowski v. Price, No. 23-P-520, slip op. at 13–16 (Mass. App. Ct. Aug. 16, 2024) (unpublished Rule 23.0 decision).
[9] Szawlowski Realty brought a summary process action in which Szawlowski Realty  to  evict  Stanley’s  grandson  and  spouse  (Stanley  S.  and  Gloria
<continued…>
 
                                                            -3-
 
1.2. Factual Allegations in this Complaint. The Trustee’s Complaint in this action makes the following allegations, or incorporates documents that show that the following facts are true. The documents discussed below are all attached to and referenced as exhibits in the Complaint.
The Companies are closely-held businesses that have a small number of stockholders or members, no ready market for their corporate stock or membership units, and substantial stockholder or member participation in their management.
1.2.1. The 2009 Shareholder Stock Redemption Agreement. In 2009, Frank, Chester, John, and Stanley entered into a shareholder stock redemption agreement (the “2009 SSRA”) that restricts the transfer of shares in the Szawlowski corporations, gives a shareholder’s estate the option to sell and gives the Companies the option to buy shares that belong to a shareholder who dies, and establishes a method for valuing shareholder interests if they are repurchased by the Companies, based on the fair market value of each company’s assets excluding good will.
1.2.2. The 2016 Equity Agreement. In February 2016, just days before John died, the four brothers entered into a written “Equity Agreement” stating that (I) the combined value of all assets belonging to the Companies (including good will) was $16 million as of that date and that (ii) if any brother were to die, the combined value of his interest in the Companies would be $4 million as of that date. The brothers stated their intention that this determination of value be binding, with the “hope and expectation that this agreement between the four of us would eliminate the need for disagreement or dispute” in the future.
But the plain language of the contract makes clear that this valuation was actually not binding. This agreement goes on to say that the joint valuation as of February 2016 did not limit or change any rights under the 2009 SSRA to challenge valuation of a deceased brother’s ownership interest. Therefore, the Equity Agreement did not actually alter any rights set forth in the 2009 SSRA.
1.2.3. The 2018 SSRA Amendment. In late 2018, after John had died but while his three brothers were all still living, Frank and Chester tried to amend the
 
--------------------------------------------
 
Szawlowski) from their home. This case was originally Western Housing Court action 21H79SP003052, and was then transferred to Hampshire Superior Court as civil action 2380CV00053. Stanley S. responded by asserting an ultimately successful claim for adverse possession in Land Court action 21 MISC 000598. The ruling in favor of Stanley S. is on appeal in Appeals Court no. 2024-P-1107.
 
                                                            -4-
 
2009 SSRA in a purported attempt to freeze Stanley and the Trust out of the Companies and deprive them of the full value of their interest in the companies.
Paragraphs 4 and 5 of the 2018 SSRA Amendment eliminated the prior valuation methodology (fair market value of the Companies’ assets excluding good will) and replaced it with either the fixed value specified in the 2016 Equity Agreement or the fair market value of the minority shareholder’s interest. Joseph alleges that these changes were designed to devalue any shares subject to repurchase by the Companies upon Stanley’s death.
Attorneys George Price and Julie Bryan of the Casner & Edwards law firm prepared the 2018 SSRA Amendment and written consents in which Frank and Chester approved the amendment and new directors. Price sent those documents to Stanley on December 4, 2018.
Stanley’s lawyer responded one week later, objecting to the substance of the 2018 amendment and the process by which it was adopted. This letter also said that “Stanley will not and does not consent” to any part of the 2018 SSRA Amendment. Stanley made an offer to resolve the dispute with his brothers, asked them to enter into a tolling agreement, and threatened to sue Frank and Chester if a prompt settlement was not reached.
In August 2019, Stanley and the Trustee sued Frank, Chester, the other directors and managers of the Szawlowski Companies, and the Companies themselves in an attempt to prevent the 2018 SSRA Amendment from taking effect.[10] The Court takes judicial notice that in October 2019 the Trustee filed an amended complaint in this first shareholder lawsuit, and that Count III sought a declaratory judgment that the 2018 SSRA Amendment was void to the extent that it purported to reduce the value of Stanley’s equity interests in the Companies as of Stanley’s death.[11]
 
--------------------------------------------
[10] This first shareholder lawsuit was docketed as Hampshire Superior Court civil action no. 1980CV00132. Joseph’s complaint in this action says that the first shareholder lawsuit was filed on August 5, 2018. That is a typographical error, as the docket indicates that the action was actually filed on August 5, 2019.
[11] A judge may take judicial notice of the records in a related judicial action when deciding a motion for judgment on the pleadings under Mass. R. Civ. P. Rule 12(c) or a motion to dismiss under Rule 12(b)(6). Jarosz v. Palmer, 436 Mass. 526, 530 (2002) (motion for judgment on the pleadings); Reliance Ins. Co. v. City of Boston, 71 Mass. App. Ct. 550, 555 (2008) (motion to dismiss).
 
                                                            -5-
 
In January 2020, Chester called a shareholder meeting to vote on whether to ratify the 2018 SSRA Amendment. Frank and Chester voted at the special meeting to ratify the 2018 SSRA Amendment.
1.2.4. Stanley’s Death and the Attempt to Repurchase His Shares. Stanley E. Szawlowski, Jr., died on March 4, 2020, after a sudden illness.
Eighteen days later, on March 22, the Companies sent a letter exercising their right to repurchase Stanley’s ownership shares and interests. The Companies said that they were acting pursuant to the original 2009 SSRA, the 2016 Equity Agreement, and the 2018 SSRA Amendment. The companies offered to pay $4 million to repurchase Stanley’s shares and interests, and to waive the Companies’ asserted right to recoup any amounts that Stanley owed to them.
Under ¶ 4(f) of the 2009 SSRA, the Trustee had to give notice in writing within 30 days if he wanted to seek an independent appraisal of the Companies’ assets, and have that appraisal determine the appropriate purchase price for Stanley’s shares and membership interests. The Companies specifically reminded the Trustee of this deadline in their May 22, 2020, letter.
Even though the companies had already exercised their right to repurchase Stanley’s shares, on June 1, 2022, the Trust sent a written demand that the companies repurchase Stanley’s shares in an amount based on the fair market value of the companies. This letter states that the Trustee planned to send a separate response to the companies’ March 22 repurchase notice. The June 1 letter did not give notice that the Trust was exercising its contractual right to an independent appraisal of fair market value.
Several weeks later, on June 17, 2020, the Trustee (through counsel) responded in writing to the Companies’ March 22 repurchase notice. This letter said that “the Trust rejects the proposal set forth in the Notice as it grossly undervalues the value of the shares and membership interests owned by the Trust.” It also referred to the lawsuit in which the Trust was seeking to have relevant parts of the 2018 SSRA Amendment declared to be invalid, and stated that the Trust reserved its right “to continue to contest the validity of the SSRA Amendment.”
However, once again the Trustee did not give notice that the Trust was exercising its contractual right to an independent appraisal of fair market value. Instead, the Trustee offered to sell Stanley’s ownership shares and membership interests in the Szawlowski Companies in exchange for a lump-sum payment of $5.33 million and other consideration.
 
                                                            -6-
 
The Court takes judicial notice that the Trustee alleged in ¶ 238 of his amended counterclaims in the 21-21 Shareholder Action that “[a]ppraisal rights under Paragraph 4(d)” of the 2009 SSRA “have never been triggered.”
1.3. Procedural Background in This Action. Joseph’s Complaint alleges that the Casner Defendants: (I) conspired with each other and with Frank and Chester to freeze the Trust out of the Szawlowski companies; (ii) breached a fiduciary duty that they owed to the Trust; (iii) aided and abetted Frank and Chester in freezing-out the Trust; and (iv) interfered with the contractual and business relations between the Trust and the Companies.[12]
In November 2022, the Court allowed the Casner Defendants’ motion to dismiss. It ruled that these claims were barred by the litigation privilege, and that in any case the facts alleged in the complaint do not plausibly suggest that the Trust suffered any compensable injury because of anything done by these defendants. Judgment entered January 30, 2023. The Trustee appealed.
The Appeals Court reversed. In an unpublished decision issued August 16, 2024, it held that the litigation privilege did not apply in the circumstances of this case and that the facts alleged in the complaint were “sufficient to plausibly suggest an entitlement to relief.” The Appeals Court also rejected an alternative argument that the facts alleged do not plausibly suggest that the Casner Defendants owed any fiduciary duty to Stanley or the Trust.[13]
With respect to whether Stanley or the Trust was injured by the Casner Defendants’ alleged wrongdoing, the Appeals Court noted that prior or subsequent developments in the shareholder litigation among Frank, Chester, and the Trustee could have the effect of barring the Trustee’s claims against the Casner Defendants, and said that “[w]e express no view” on that issue.
The rescript from the Appeals Court was issued October 17, 2024, and docketed in this action the next day. The Casner Defendants filed their Answer ten days
 
--------------------------------------------
 
[12] The Trustee dismissed Count V of the complaint against all defendants. That claim had alleged that Price, Bryan, Cordell, Maffucci, and Casner and Edwards had violated rules of professional conduct by representing Frank and Chester as well as some or all of the Szawlowski companies.
[13] In its prior decision in this case, the Court also dismissed the Trustee’s claims against Jeffrey Robbins, Joseph Lipchitz, Page Schroeder, and Saul Ewing Arnstein & Lehr LLP. The Appeals Court affirmed the dismissal of the claims against those defendants, though it ruled that dismissal was proper under Mass. R. Civ. P. 12(b)(6) rather than under the anti-SLAPP statute.
 
                                                            -7-
 
later, served a motion for judgment on the pleadings on October 31, 2024, and filed the motion papers and opposition in mid-November. The Court heard oral argument in early January 2025.
1.4. March 2023 Decision in the Second Shareholder Suit. Meanwhile, the Court issued a decision in the 21-21 Shareholder Action regarding Joseph’s various counterclaims and third-party claims. In bringing that lawsuit, the Companies asserted a claim against the Trust for specific performance of the SSRA, alleging they had the contractual right to repurchase Stanley’s shares or ownership interests. The Companies also sought declaratory judgment as to the Companies’ claimed right to repurchase Stanley’s shares and interests. Joseph responded with counterclaims, including a claim that the Companies, Frank, and Chester breached the 2009 SSRA and what the Court construed as a request for a declaratory judgment as to whether paragraphs 4 and 5 of the 2018 SSRA amendment were valid.
In March 2023, several months after the Court allowed the original motions to dismiss this action, the Court decided a motion by the Companies, Frank, and Chester to dismiss Joseph’s counterclaims in the 21-21 Shareholder Action. The Court will summarize key parts of this decision below.[14]
the Court resolved the Trustee’s counterclaim challenging the validity of parts of the 2018 SSRA Amendment as part of its March 2023 decision. The Court explained that “[w]hether application of these parts of the 2018 SSRA Amendment to Stanley’s ownership interests is barred by the plain language of the 2009 SSRA is a question of law for the Court to decide, and does not require the presentation of any evidence or any fact finding.”
On this issue, the Court was persuaded by Joseph’s arguments, agreeing with him that the disputed parts of the 2018 SSRA Amendment were invalid from their inception. The Court concluded that:
Paragraphs 4 and 5 of the 2018 SSRA Amendment are invalid as applied to Stanley’s ownership interests, because they adversely affected Stanley’s rights with respect to future distributions or allocations by the companies without his consent. As discussed above, paragraph 4 eliminated Stanley’s right, if the companies opted to repurchase his shares after his death, for his estate or surviving trust to be paid based on a proportional allocation of the fair market value of the companies’
 
--------------------------------------------
 
[14]      The full decision is available as paper no. 39 in Hampshire Superior Court docket 2180CV00021.
 
                                                            -8-
 
assets at the time of his death, and replaced it with a right to obtain a share of a fixed sum. Paragraph 5 similarly eliminated Stanley’s right for his estate or surviving trust to have that proportional share of the fair market value of the companies’ assets decided by independent appraisers, and replaced it with a right to have independent appraisers determine the fair market value of Stanley’s ownership interests.
The Court therefore ordered that, “[w]hen final judgment enters, it shall include a declaration that paragraphs 4 and 5 of the November 30, 2018, amendment to the 2009 shareholder stock redemption agreement are invalid and therefore void with respect or as applied to any ownership or membership interests that had belonged to Stanley E. Szawlowski.”[15]
In addition, however, the Court concluded that the Trustee waived his right under the 2009 SSRA to seek an independent appraisal by failing to request one within 30 days after the Companies gave notice that they were exercising their option to repurchase Stanley’s share and membership interests. The Court explained that, as discussed above, the Trustee alleges that he made two written responses within 30 days of the May 22, 2020, offer to purchase Stanley’s shares for $4 million, and neither response gave notice that the Trustee was invoking his right to an independent appraisal.
2. Analysis. With all of that as background, let’s turn to the pending motion for judgment on the pleadings. The Casner Defendants contend that they are entitled to judgment on the pleadings in their favor for three main reasons, arguing that (I) Joseph lacks standing to assert these claims in a direct action on behalf of the Trust rather than a derivative action on behalf of the Companies, (ii) the Casner Defendants never represented the Companies and therefore could not have owed Stanley or the Trust any fiduciary duty, and (iii) the Court’s March 2023 decision in the 21-21 Shareholder Action bars Joseph’s claims either under the “law of the case” doctrine or under the doctrine of issue
 
--------------------------------------------
 
[15] Joseph also challenged ¶ 2 of the 2018 SSRA Amendment, which provided that the Companies’ right to repurchase shares would be triggered not only by death or other circumstances listed in the 2009 SSRA, but would also be triggered if the majority shareholders chose to terminate any shareholder’s active participation in running the Companies. In its March 2023 decision, the Court explained that it did not need to determine whether ¶ 2 was valid, as there was no allegation that Frank and Chester ever sought to terminate Stanley’s ownership interests by exercising the powers purportedly granted to them by this provision.
 
                                                            -9-
 
preclusion. With respect to the third of these issues, during oral argument the Court gave both sides the opportunity to address whether the Trustee’s claims are instead barred under the doctrine of judicial estoppel.[16]
A motion for judgment on the pleadings under Mass. R. Civ. P. 12(c) that seeks dismissal of claims or counterclaims on the ground that they fail to state a claim upon which relief can be granted is governed by the same standards as a similar motion to dismiss brought under Rule  12(b)(6).  See  Mullins  v.  Corcoran,  488 Mass. 275, 281 (2021). To survive a motion to dismiss under Rule 12(b)(6), or an analogous motion for judgment on the pleadings under Rule 12(c), a complaint or counterclaim must allege facts that, if true, would “plausibly suggest[] … an entitlement to relief.” Id., quoting UBS Fin. Servs., Inc. v. Aliberti, 483 Mass. 496, 405 (2019). A dismissal under Rule 12(b)(6) “for failure to state a claim … operates as a dismissal on the merits” and therefore has “res judicata effect.” Saade v. Wilmington Trust, National Ass’n, 494 Mass. 1193, 1194 (2024), quoting Mestek, Inc. v. United Pacific Ins. Co., 40 Mass. App. Ct. 729, 731, rev. denied, 423 Mass. 1108 (1996). In other words, a Rule 12(b)(6) or analogous Rule 12(c) dismissal is with prejudice.
The Court concludes that the first two arguments by the Casner Defendants are without merit. But it concludes that Joseph should be judicially estopped from asserting that that the challenged portions of the 2018 SSRA Amendment are valid and enforceable, and that without such allegations his complaint fails to state any claim against the Casner Defendants.
2.1. Standing—Derivative Action vs. Direct Claims. The Casner Defendants’ assertion that the Trustee lacks standing to press the Trust’s claims against them, because those claims may be asserted only on behalf of each of the Companies in a derivative action, is without merit.
Joseph may press direct claims on behalf of the Trust against the Casner Defendants because he contends that these defendants violated duties that they owed to Stanley or to the Trust personally, and that as a result the Trust suffered an injury not shared by the Companies or their other shareholders or members. See International Bhd. of Elec. Workers Local No. 129 Benefit Fund v.
 
--------------------------------------------
 
[16] Having addressed during oral argument whether Joseph should be judicially estopped from pressing a position that is inconsistent with his prevailing argument in the 21-21 Shareholder Action, neither side sought leave to submit additional post-hearing briefing about the issue.
 
                                                            -10-
 
Tucci, 476 Mass. 553, 557–562 (2017); Askenazy v. KPMG LLP, 83 Mass. App. Ct. 649, 654–655 (2013).
2.2. Allegation of Fiduciary Duty. The Casner Defendants’ attempt to resuscitate their argument that the Trustee had failed to allege facts plausibly suggesting that they owed any fiduciary duties to Stanley or to the Trust is also unavailing, as it was already considered and rejected by the Appeals Court.
The Appeals Court addressed and rejected the Casner Defendants’ argument “that the plaintiff’s claims should be dismissed for failure to allege a breach of fiduciary duty.” Szawlowski v. Price, No. 23-P-520, slip op. at 12 (Mass. App. Ct. Aug. 16, 2024) (unpublished Rule 23.0 decision). It held that the facts alleged in the complaint “support a plausible inference that the remaining Casner defendants, acting as counsel for the companies, breach a fiduciary duty owed to Stanley and the trust, as well as aided, abetted, and conspired with Frank and Chester in breaching their fiduciary duties to Stanley and the trust.” Id.  at 12–13. And it ruled that the Casner Defendants’ assertion “that they did not actually represent the companies in connection with the 2018 SSRA amendment” is not grounds for dismissing this action, but instead should “be addressed on a developed factual record following discovery.” Id. at 13.
These holdings are the law of the case, are binding on all parties, and may not be reconsidered now that the case has been remanded to the Superior Court. See City Coal Co. of Springfield, Inc. v. Noonan, 434 Mass. 709, 712 (2001); Commonwealth v. Clayton (No. 1), 63 Mass. App. Ct. 608, 611–613 (2005).[17]
2.3. Judicial Estoppel Is Appropriate. The Appeals Court also made clear, however, that it did not consider or decide whether the Court’s March 2023 ruling in the 21-21 Shareholder Action effectively resolved any of the Trustee’s claims in this action. To the contrary, the Appeals Court said, “We express no view on how developments in the shareholder litigation that may have
 
--------------------------------------------
 
[17] “The ‘law of the case’ doctrine reflects a ‘reluctance “to reconsider questions decided upon an earlier appeal in the same case.” ’ ” Clayton (No. 1), 63 Mass. App. Ct. at 611, quoting King v. Driscoll, 424 Mass. 1, 7–8 (1996), quoting in turn Peterson v. Hopson, 306 Mass. 597, 599 (1940). “An issue[,] once decided, should not be reopened unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.” Clayton (No. 1), supra, quoting King v. Driscoll, 424 Mass. at 8. None of those exceptions applies here.
 
                                                            -11-
 
occurred or will occur since the filing of the present complaint might affect this case.” Szawlowski v. Price, supra, slip op. at 12.
The Court held in its March 2023 decision that key provisions in the 2018 SSRA Amendment that have been challenged by the Trust are invalid. More specifically, it agreed with Joseph’s arguments that paragraphs 4 and 5 of that amendment were invalid because they were an improper attempt to strip Stanley, without his consent, of the right to have his Estate or Trust receive payment for his shares based on the fair market value of the Companies’ assets.
Now that Joseph has prevailed in the 21-21 Shareholder Action in establishing that the disputed provisions in the 2018 document are invalid and of no legal effect, the Court concludes in the exercise of its discretion that the Trustee shall be judicially estopped from taking the contrary position in this action.
2.3.1. The Doctrine of Judicial Estoppel. “Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position that it had previously” and successfully “asserted in another proceeding.” Mullins, 488 Mass. at 286, quoting Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 639–640 (2005). “A successful claim of judicial estoppel generally requires the showing of two core elements: (1) the party to be estopped is asserting a position that is ‘directly contrary’ to a position asserted in a prior case, and (2) that party ‘succeeded in convincing the court to accept its prior position.’ ” Spinosa v. Tufts, 98 Mass. App. Ct. 1, 5 (2020), quoting Otis, supra, at 641. With respect to the second of these elements, it is not enough to show that the party prevailed in the prior proceeding; instead there must be evidence that the prior tribunal adopted the position that allegedly is contrary to the party’s position in the current litigation. See Mullins, 488 Mass. at 287.
“As an equitable doctrine, judicial estoppel is not to be defined with reference to ‘inflexible prerequisites or an exhaustive formula for determining [its] applicability.’ ” Otis, 443 Mass. at 640, quoting New Hampshire v. Maine, 532 U.S. 742, 751 (2001). Instead, “the doctrine properly is invoked whenever a ‘party is seeking to use the judicial process in an inconsistent way that the courts should not tolerate.’ ” Id, quoting East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621, 623 (1996). “The purpose of the doctrine is ‘to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system.’ “ Mahabir v. Crocker, 104 Mass. App. Ct. 242, 245 (2024), quoting Otis, 443 Mass. at 640–641.
 
                                                            -12-
 
“Application of the equitable principle of judicial estoppel to a particular case is a matter of discretion.” Otis, 443 Mass. at 639–640. “The Supreme Judicial Court has ‘decline[d] to construct a categorical list of requirements or to delineate each and every possible exception.’ ” Spinosa v. Tufts, 98 Mass. App. Ct. 1, 6 (2020), quoting Otis, supra, at 642. “Instead, judges are to ‘use their discretion, and their weighing of the equities, and apply judicial estoppel where appropriate to serve its over-all purpose” of safeguarding the integrity of the courts. Spinosa, supra, quoting Otis, supra.
2.3.2. Joseph Successfully Challenged the 2018 SSRA Amendment. Paragraphs 4 and 5 of the 2018 SSRA  Amendment were an attempt to rewrite ¶¶ 4(b) and 4(d) of the “dissolution, liquidation and termination” section of the 2009 SSRA. The original ¶ 4(b) provided that if a shareholder died then the Companies could repurchase their interest for an amount equal to the shareholder’s proportionate share of the fair market value of the assets of the company (excluding good will) as of the date the shareholder died. The original ¶ 4(d) provides for an independent appraisal process if the deceased shareholder’s estate or surviving family trust believes that the proposed purchase price is unfair; it requires the appraiser to determine the value of a shareholder’s interest as an appropriate percentage of the fair market value of all the company’s assets excluding good will.
Paragraph 4 of the 2018 SSRA Amendment purported to amend ¶ 4(b) of the 2009 SSRA to change the valuation of a deceased shareholder’s interest from being based on the fair market value of the Companies’ assets to instead being based on the $16 million value that the brothers agreed was appropriate as of February 2016 in their Equity Agreement. Paragraph 5 of the same document purported to amend ¶ 4(d) of the 2009 SSRA to provide that any independent appraisal would no longer evaluate the fair market value of the Companies’ assets, but would instead estimate the fair market value of the shareholder’s ownership interest.
After its prior decision dismissing the remaining claims in this case, the Court ruled in March 2023 in the 21-21 Shareholder Action that these two parts of the 2018 SSRA Amendment are invalid, meaning that ¶¶ 4(b) and 4(d) of the 2009 SSRA were not changed in any way. The 2009 SSRA provided that an amendment that “chang[es] adversely the rights of a shareholder with respect to distributions, allocations or voting … shall be effective only with that shareholder’s consent.” Given this contractual restriction on amendments, the
 
                                                            -13-
 
Court held in its March 2023 decision that ¶¶ 4 and 5 of the 2018 SSRA Amendment were invalid as applied to Stanley’s ownership interests because they adversely affected Stanley’s rights with respect to future distributions or allocations by the companies without Stanley’s consent.
2.3.3. Joseph May Not Take a Contrary Position Here. Since Joseph has prevailed in showing that paragraphs 4 and 5 of the 2018 SSRA Amendment were and are invalid, the Court exercises its discretion to rule that Joseph is judicially estopped from taking a contrary position in this or any other case.
The only way that Joseph may continue to press any of the Trust’s claims against the Casner Defendants is by contending, as Joseph alleges in his complaint in this action, that the 2018 SSRA Amendment harmed Stanley and the Trust by eliminating the valuation methodology in ¶ 4(b) of the 2009 SSRA and by materially changing the standard in ¶ 4(d) for any independent appraisal process. In other words, to press his claims against the Casner Defendants the Trustee must disavow the position that he took and on which he prevailed in the 21-21 Shareholder Action.
The Court concludes that it would be inequitable, intolerable, and undermine the integrity of the judicial system for Joseph to contend that the 2018 SSRA Amendment stripped important protections from the original 2009 SSRA while pressing his claims against the Casner Defendants, even after Joseph has prevailed in related shareholder litigation against Frank, Chester, and the Companies on his claim that the disputed amendments were and are not valid.
The Court’s further ruling in its March 2023 decision that Joseph waived any right to an independent appraisal by not requesting one within 30 days after the Companies exercised their rights to repurchase Stanley’s ownership interests does not alter this equitable calculus. Judicial estoppel is not limited to situations where a litigant has prevailed on their claims and obtained final judgment in their favor in a prior lawsuit. Instead, a court has discretion to impose judicial estoppel against any party that previously “succeeded in convincing a court to accept its prior position” on an issue, and then seeks to assert a “directly inconsistent” position in a later proceeding. See Mahabir,  104 Mass. App. Ct. at 245, quoting Otis, 443 Mass. at 640–641. Joseph succeeded in convincing the Court to accept his prior position that paragraphs 4 and 5 of the 2018 SSRA Amendment are invalid, and to order that declaratory judgment to that effect be entered in the Trust’s favor. It would be inequitable to allow Joseph to continue to assert a directly inconsistent position in this action.
 
                                                            -14-
 
2.4. Judicial Estoppel Bars Joseph’s Claims. The claims against the Casner Defendants are all based on the incorrect premise that the 2018 SSRA Amendment eliminated rights or protections guaranteed to Stanley in the 2009 SSRA. The premise is incorrect because the Court has ruled in the 21-21 Shareholder Action that the disputed provisions in the 2018 SSRA Amendment are not valid. If one disregards the contrary allegations by Joseph in this action, which are now barred by judicial estoppel, the remaining allegations in the complaint fail to state any actionable claim against the Casner Defendants.[18]
2.4.1. Breach of Fiduciary Duty. To state a viable claim for breach of fiduciary duty, the Trustee must allege facts plausibly suggesting “(1) the existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal connection between breach of the duty and the damages.” See Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 842 (2017).
Joseph claims that the Casner Defendants breached their alleged fiduciary duties to Stanley, and thereby harmed the Trust, by helping bring about the
 
--------------------------------------------
 
[18] The Court is not persuaded by the Casner Defendants’ invocation of the doctrine of issue preclusion. “ ‘Issue preclusion’ ... prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.” Cruickshank v. MAPFRE U.S.A., 94 Mass. App. Ct. 662, 664 (2019), quoting Heacock v. Heacock, 402 Mass. 21, 23 n.2 (1988). “In order for issue preclusion to bar relitigation of an issue determined in an earlier adjudication, ‘a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication.’ ” Id., quoting Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998). The requirement of a final judgment is a material difference between the doctrine of issue preclusion and the doctrine of judicial estoppel.
Since no final judgment has entered in the 21-21 Shareholder Action, the Court’s March 2023 decision cannot have issue preclusive effect. See, e.g., Gates v. Reilly, 453 Mass. 460, 464–465 (2009). The Court recognizes that issue preclusion “does not require a final judgment in the strict sense,” and that an interlocutory order may have preclusive effect if it was appealed or could have been appealed. Jarosz v. Palmer, 436 Mass. 526, 533–534 (2002). But the Casner Defendants have not shown that the Trustee had any right to appeal the Court’s interlocutory decision in that case, or that a single justice would likely have allow a petition seeking leave to appeal that decision to a full panel. Id. at 534.
 
                                                            -15-
 
2018 SSRA Amendment and thereby eliminating the protections of ¶¶ 4(b) and 4(d) of the 2009 SSRA.
Since the Court has now held that these aspects of the 2018 SSRA Amendment are invalid, and that Joseph is estopped from pressing any claim or argument to the contrary, this claim fails. Massachusetts has never recognized any tort claim for an unsuccessful, attempted breach of fiduciary duty. Having prevailed in showing that the 2018 amendment was invalid in the 21-21 Shareholder Litigation, Joseph is estopped from pressing his directly contrary claim in this case that the Casner Defendants breached a fiduciary duty by helping Frank and Chester adopt that very amendment, or that the Trust was harmed by the adoption of an invalid amendment.
During oral argument, Joseph insisted that he should not be estopped from continuing to contend that relevant parts of the 2018 SSRA Amendment succeeded in amending the 2009 SSRA, arguing that he did not exercise and thereby waived the Trust’s appraisal rights under the 2009 SSRA because he had been told that under the 2018 SSRA Amendment any appraisal would no longer be based on the market value of the Companies’ assets.
This argument cannot salvage the breach of fiduciary duty claim for three reasons. First, the complaint does not contain any allegation that Joseph was relying on legal advice from the Casner Defendants in deciding whether to exercise contractual appraisal rights under the 2009 SSRA. Second, the complaint affirmatively alleges that the Trustee was not relying on any contention by the Casner Defendants that the 2018 SSRA Amendment was valid. To the contrary, in its complaint in this action the Trust specifically and correctly alleges that the Trust’s letter dated June 17, 2020, reiterated the Trustee’s position that the 2018 amendment was invalid and “reserved the right to continue to challenge the validity of that agreement.” Third, since the Court has determined that the Trustee is estopped from contending that paragraphs 4 and 5 of the 2018 SSRA Amendment are valid, mere reliance on an incorrect assertion to the contrary by the Casner Defendants would not plausibly suggest that any fiduciary duty had been breached. A failed attempt to amend the 2009 SSRA is not a breach of fiduciary duty.
In sum, the entire premise of the breach of fiduciary duty claim is that the Casner Defendants improperly helped Frank and Chester eliminate the provisions of the 2009 SSRA requiring that the Companies pay a proportionate share of the fair market of their assets (excluding good will) to reacquire
 
                                                            -16-
 
Stanley’s shares or membership interests. But the Court held in the 21-21 Shareholder Action that this premise is incorrect, and that paragraphs 4 and 5 of the 2018 SSRA Amendment were and are invalid. And the Court has now exercised its discretion to judicially estop the Trustee from claiming or arguing to the contrary in this case. It follows that Joseph has failed to state a valid claim against the Casner Defendants for breach of fiduciary duty.
2.4.2. Aiding and Abetting Breach of Fiduciary Duty The aiding and abetting claim fails for much the same reasons.
The elements of the tort of aiding and abetting a breach of fiduciary duty are: (1) some third-party breached a fiduciary duty; (2) the defendant knew of the breach; (3) the defendant actively participated in, substantially assisted in, or encouraged the breach “to the degree that he or she could not reasonably be held to have acted in good faith;” and (4) the plaintiff was injured as a result. See Arcidi v. National Ass’n of Govt. Employees, Inc. 447 Mass. 616, 623–624 (2006).
Here, Joseph claims that Frank and Chester breached their fiduciary duties by adopting the challenged parts of the 2018 SSRA Amendment, and that the Casner Defendants aided and abetted those breaches.
But since the Court has now determined that Joseph is judicially estopped from claiming or arguing that paragraphs 4 and 5 of the 2018 SSRA Amendment were valid, the remaining allegations in his complaint do not plausibly suggest that Frank or Chester actually breached their fiduciary duties in this manner.
And there can be no liability for aiding and abetting a breach of fiduciary duty in the absence of an underlying breach of fiduciary duty. See Arcidi v. National Ass’n of Govt. Employees, Inc., 447 Mass. 616, 623–624 (2006). Therefore, with Joseph judicially estopped from claiming that the 2018 SSRA Amendment had the effect of depriving Stanley and thus his family Trust of valuable protections, the remaining allegations in the complaint do not plausibly suggest that the Casner Defendants may be held liable on an aiding and abetting theory.
2.4.3. Civil Conspiracy. The Court’s ruling as to judicial estoppel also means that Joseph has failed to assert a viable claim of civil conspiracy against the Casner Defendants.
To state a claim for civil conspiracy on a “concerted action” theory, a plaintiff must allege facts plausibly suggesting “an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement.” Bartle v. Berry, 80 Mass. App. Ct. 372, 383–384 (2011).
 
                                                            -17-
 
Here, the alleged underlying tort is the purported breaches of fiduciary duty by using the 2018 SSRA Amendment to take away rights granted to Stanley in the 2009 SSRA. Now that Joseph has been judicial estopped from claiming that those parts of the 2018 SSRA Amendment are valid, the remaining allegations in his complaint do not plausibly suggest that any underlying tort was committed and therefore do not state a viable claim for civil conspiracy.
2.4.4. Tortious Interference. Finally, Joseph’s claim against the Casner Defendants for tortious interference also fails in light of the application of judicial estoppel. Joseph claims that the Casner Defendants interfered with Stanley’s contractual relations with the Companies, and thereby harmed the Trust, by helping Frank and Chester use the 2018 SSRA Amendment to deprive Stanley of protections guaranteed under the original 2009 SSRA. The Court’s ruling that Joseph is judicially estopped from claiming that the challenged portions of the 2018 SSRA Amendment are valid dooms this claim.
To state a claim for intentional interference with contractual relations, a party must allege facts plausibly suggesting that: “(1) [it] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.” Weiler v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014), quoting G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991).
If the third party did not breach their contract, then a defendant cannot be held liable for tortiously interfering with a contract. See JNM Hospitality, Inc. v. McDaid, 90 Mass. App. Ct. 352, 354–55 & 357 (2016) (where landlord did not breach lease by failing to make nonexclusive parking spaces available to customers of restaurant lessee, third party could not be liable for intentionally interfering with lease to detriment of tenant); Cavicchi v. Koski, 67 Mass. App. Ct. 654, 661 (2006) (where clients did not breach contingent fee agreements when they discharged attorney, new lawyer who convinced them to do so could not be liable for intentional interference with contract).
Since the Court determined in the 21-21 Shareholder Action that the challenged portions of the 2018 SSRA Amendment are not valid, and now has judicially estopped Joseph from asserting a claim to the contrary in this action, the remaining allegations in the complaint no longer plausibly suggest that the Companies, Frank, or Chester have interfered with any rights that the Trust has under the 2009 SSRA.
 
                                                            -18-
 
2.5. Third-Party Complaint against the Robinson Defendants. During oral argument, the Casner Defendants agreed that their third-party claims against the Robinson Defendants for contribution or indemnification would be moot if the Court were to allow their motion for judgment on the pleadings with respect to the Trustee’s claims. The Court will therefore dismiss the third-party complaint without prejudice as moot.
ORDERS
Since Joseph E. Szawlowski, as Trustee of the Stan and Mary Ellen Szawlowski Family Trust, prevailed on his claim in civil action 2180CV00021 that paragraphs 4 and 5 of the “Amendment to the Shareholder Stock Redemption Agreement for Szawlowski Potato Farms Inc., C & F Farms, Inc., Szawlowski Realty, Inc., J & S Farms, Inc., and Szawlowski Packers LLC and Amendment to the Operating Agreement of Szawlowski Packers LLC” (dated November 30, 2018) are invalid, the Court exercises its discretion to order that Joseph is judicially estopped, individually and in his capacity as Trustee, from making or pressing any claim or argument to the contrary in this or any other related civil action.
In light of the Court’s order as to judicial estoppel, the motion for judgment on the pleadings by George W. Price, Julie Bryan, and Casner & Edwards, LLP, is allowed. On its own motion, the Court therefore orders that the third-party claims against James F. Martin, David S. Lawless, and Robinson Donovan P.C. are dismissed as moot.
Consistent with this decision and prior orders issued in this civil action, final judgment shall enter (i) providing that plaintiff Joseph E. Szawlowski, as Trustee of the Stan and Mary Ellen Szawlowski Trust, shall take nothing on his claims, and dismissing Plaintiff’s claims with prejudice, and (ii) providing that third-party plaintiffs George W. Price, Julie Bryan, and Casner & Edwards, LLP, shall take nothing on their third-party claims, and dismissing their third- party claims without prejudice.